1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GEMINI INSURANCE COMPANY,
     a corporation,
11
                   Plaintiff,                    No. CIV S-10-3172 KJM JFM
12          vs.

13   WESTERN MARINE INSURANCE
     SERVICES CORPORATION, a
14   California corporation,

15                 Defendant.
     _____/
16
     WESTERN MARINE INSURANCE
17   SERVICES CORPORATION, a
     California corporation,
18
                   Third-party Plaintiff,
19
            vs.                                  ORDER
20
     ALLIANT INSURANCE SERVICES,
21   INC., a corporation, DAVID CRANMER,
     an individual, and RESEARCH
22   SPECIALISTS, INC., a corporation

23                 Third-party Defendants.

24   _____/

25          On June 22, 2011, the court heard argument on the pending motions brought by

26   Research Specialists, Inc. ("RSI") and Alliant Insurance Services, Inc. ("Alliant") and David

1  Cranmer ("Cranmer").  Anton C. Gershler, Esq., appeared for defendants Alliant and Cranmer;

2  Mark Kincaid, Bonetati & Kincaid, Inc., appeared for third party defendant RSI; and Steven

3  Kronenberg, Murphy, Pearson, Bradley & Feeney appeared for third party plaintiff Western

4  Marine Insurance Services Corporation ("Westmar"). Valerie Moore, Haight, Brown and

5  Bonesteel, LLP, was present on behalf of proposed intervenor Scottsdale Indemnity Company.

6  I.  Proceedings In This Court

7          On November 23, 2010, Gemini Insurance Company ("Gemini") filed a

8  complaint against Westmar, an insurance brokerage specializing in marine insurance, alleging

9  causes of action for breach of contract and negligence.  ECF No. 1.  On February 17, 2011,

10 Westmar answered Gemini's complaint and filed a Third Party Complaint against Alliant,

11 Cranmer, and RSI, alleging causes of action for indemnity and breach of contract.  ECF Nos. 9,

12 10.

13         Third party defendants Alliant and Cranmer have filed a motion to dismiss or to

14 stay the third party action, while third party defendant RSI has filed a motion to dismiss the third

15 party action; Westmar has opposed both motions.  ECF Nos. 15, 18, 20, 21.

16         In addition, Scottsdale Indemnity Company ("Scottsdale") has filed a motion for

17 leave to intervene as a fourth party plaintiff against Gemini, Alliant, Cranmer, RSI and Marine

18 Claims Services, Inc ("MCS").  Gemini, Alliant, Cranmer and RSI have opposed this motion.

19 The court ordered this motion submitted without argument.

20         After considering the parties' arguments, the court GRANTS third party

21 defendant RSI's motion to dismiss; DENIES third party defendants Alliant's and Cranmer's

22 motion to dismiss or stay; and DENIES proposed fourth party plaintiff Scottsdale's motion to

23 intervene.

24 /////

25 /////

26 /////

2

II.  The Complaint, The Third Party Complaint, and the Proposed Fourth Party Complaint

     A.  Gemini's Original Complaint

      Gemini, an insurer, alleges that it entered into a Program Administrator Agreement ("PAA") with Westmar, an insurance broker specializing in marine insurance, giving Westmar authority to issue Gemini's AquaPac Plus insurance policies.  Gemini Complaint, ECF No. 1 ¶¶ 5-7.  As part of that contract, Westmar agreed to defend, indemnify and hold Gemini harmless for any of Westmar's negligent or willful acts, errors or omissions or those of Westmar's brokers, employees or representatives.  ECF No. 1 ¶ 7.

      Westmar issued Gemini insurance to Wesco Sales Corporation (Wesco), covering Wesco's commercial property, including piers, docks and slips and for loss of income stemming from damage to that property for 2004-2005, 2005-2006, and 2006-2007.  ECF No. 1 ¶¶ 8-11.  Westmar did not notify Wesco that the 2005-2006 and 2006-2007 policies did not include blanket coverage for all locations but rather provided coverage limits on a "per location" basis, a change from the 2004-2005 policy.  ECF No. 1 ¶¶ 8-9, 11-12.

      Wesco made a claim to Gemini under the 2006-2007 policy for damage to its docks and loss of business income.  ECF No. 1 ¶ 13.  MCS acted as third party administrator of claims to Westmar.  ECF No. 1 ¶ 14.  MCS advised Westmar that Wesco's claim should be paid based on coverage per location rather than on the basis of blanket coverage for all locations.  ECF No. 1 ¶ 15.

      Wesco filed suit against Gemini in Ventura County Superior Court, *Wesco Sales Corporation v. Gemini Insurance Company, et al.,* Case No. 56-2009-003368-22-CU-IC-VTA ("Wesco Action"), alleging Gemini had breached its contract and the covenant of good faith and fair dealing by paying the claim based on per location coverage rather than blanket coverage for all locations.  ECF No. 1 ¶ 16.

/////

/////

1   Westmar agreed to indemnify and defend Gemini in the Wesco action.  ECF No.

2   1 ¶ 17.  The Wesco action settled, with Gemini paying $950,000 toward settlement and $28,000

3   in attorneys' fees; Westmar had not indemnified Gemini for these amounts.  ECF No. 1 ¶¶ 18-20.

4   Gemini alleges that Wesco breached the PAA by failing to indemnify it for the

5   settlement costs and attorneys' fees and was negligent in failing to give specific notice to Wesco

6   that the 2005-2006 and 2006-2007 policies did not include blanket coverage for all insured

7   locations, by advising MCS that Wesco's claim should be paid on a per location basis, and by

8   failing to follow up after Wesco's application for renewal of the 2005-2006 policy included an

9   affirmative response to a question about its operation's unusual exposure.  ECF No. 1 ¶¶ 21-28.

10   B.  Westmar's Third Party Complaint

11   Westmar alleges that Wesco, a corporation that leases dock space at several

12   marinas in Southern California, sought coverage from Gemini for property damage and loss of

13   business income, working through Alliant, which provides retail insurance services, and

14   Cranmer, who is vice-president of Alliant's marine department.  ECF No. 10 ¶¶ 4-5, 9.  Westmar

15   had no direct contact with Wesco, but rather communicated with Cranmer and Alliant regarding

16   the policy for Wesco.  ECF No. 10 ¶ 9.  Alliant and Cranmer failed to disclose that Wesco had

17   suffered an earlier loss at the insured locations.  ECF No. 10 ¶¶ 11, 14.  The decision to renew

18   Wesco's coverage as well as the decision as to the amount and terms of coverage was affected by

19   Wesco, Alliant and Cranmer's failure to disclose Wesco's earlier loss.  ECF No. 10 ¶ 16.

20   Alliant and Cranmer also failed to explain to Wesco the change from blanket to per location

21   coverage.  ECF No. 10 ¶¶ 13, 15, 17.

22   In August 2005, Westmar hired RSI to inspect Wesco's insured locations.  RSI's

23   website assures potential clients that it uses accurate techniques to review commercial risks, that

24   its reports have "pin-point accuracy" and that its staff has "a strong work ethic."  These

25   representations were "essential" to Westmar's decision to hire RSI.  RSI's inspection was

26   /////

4

negligent and RSI failed to report to Westmar about the true condition of Wesco's docks.  ECF No. 10 ¶ 12.

Two of Wesco's docks were damaged in December 2006.  After the claim was paid on a per location basis, Wesco filed suit against Gemini, in Ventura County Superior Court, challenging Gemini's failure to disclose that the policies did not provide blanket coverage.  ECF No. 10 ¶¶ 17-18.  Westmar took on the defense of Gemini under the PAA, reserving the right to withdraw if it discovered, for example, that Gemini had failed to investigate and/or discover Wesco's prior loss, which could have triggered rescission.  ECF No. 10 ¶ 18.  Gemini settled with Wesco; Westmar's insurer paid half the settlement amount.  ECF No. 10 ¶ 19.

Westmar alleges causes of action for indemnity against Alliant and Cranmer, stemming from their alleged failure to advise Wesco about the change from blanket coverage to per location coverage and their alleged failure to disclose Wesco's prior loss at an insured location and against RSI, stemming from its alleged breach of its duty to inspect Wesco's docks in conformance with its representations on its website.  ECF No. 10 ¶¶ 22-24.

A second claim for breach of contract against Alliant and Cranmer alleges that Westmar's broker agreement with Alliant required them to notify Westmar of any notices of loss, yet they failed to reveal Wesco's prior loss at an insured location.  ECF No. 10 ¶ 29.

C. Scottsdale's Proposed Fourth Party Complaint[1]

Scottsdale, an indemnity company, issued a brokerage errors and omissions policy to Westmar[2] and appears as a contractual and equitable subrogee to the rights of Westmar. ECF No. 28-1 ¶ 3.  The proposed complaint recites the history of Wesco's dealing with Gemini, Westmar, Alliant and Cranmer, and describes the submission of Wesco's Notice of Loss to MCS

---

[1] Allegations in the Scottsdale proposed complaint are not repeated to the extent they mirror allegations in the original or third party complaints.

[2] Scottsdale refers to Westmar as WMIS; for consistency, the court refers to the entity as Westmar.

1  in December 2006.  ECF No. 28-1 ¶ 20.  MSC retained Theodore Brown to investigate the loss;

2  Brown determined that although the marinas had been damaged in 2001, they had not been

3  repaired properly and the damage had not been reported.  ECF No. 28-1 ¶ 21.  Despite this

4  report, Gemini paid Wesco for property damage and business interruption without a reservation

5  of rights.  ECF No. 28-1 ¶ 22.  Wesco thereafter filed suit and Gemini tendered the Wesco action

6  to Westmar for indemnification and defense.  ECF No. 28-1 ¶ 24.  Westmar in turn tendered the

7  defense to Scottsdale, which agreed to pay for the defense subject to a full reservation of rights.

8  ECF No. 28-1 ¶ 26.  Gemini failed to raise and pursue several defenses and failed to join Alliant,

9  Cranmer, RSI and MCS as defendants.  ECF No. 28-1 ¶ 27.  Scottsdale brokered a joint

10  settlement agreement in order to mitigate further damages claimed by Wesco.  It paid $950,000

11  to Wesco and Gemini paid the same sum, with neither side surrendering any claims against each

12  other or any third parties for contribution.  ECF No. 28-1 ¶ 28.

13          The proposed Fourth Party Complaint consists of common law indemnification

14  claims against Gemini, Alliant, Cranmer, RSI and MCS and a breach of contract claim against

15  Gemini.

16   III.  The Wesco Action

17          Because of the centrality of the state court litigation to the resolution of the two

18  motions to dismiss, the third party defendants have asked the court to take judicial notice of a

19  number of documents from the Ventura County Superior Court action.

20          A court may take judicial notice "'of proceedings in other courts, both within and

21  without the federal judicial system, if those proceedings have a direct relation to the matters at

22  issue.'"  *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (quoting *United States ex.*

23  *rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992).

24  Because the state court records have a "direct relation" to the issues of abstention and res

25  judicata, it is proper for this court to take judicial notice of them.

26  /////

1    In its Fourth Amended Cross Complaint filed August 13, 2010 in the Superior

2    Court, Gemini alleged that Wesco's docks had suffered severe storm damage before the 2006

3    policy, perhaps as early as 2001; Wesco reported this to Cranmer, who did not inform Gemini;

4    that Cranmer and Alliant, in conjunction with Wesco, omitted material information from

5    Wesco's application for insurance; in December 2006, Wesco reported to Gemini that its docks

6    had been damaged in a storm in October 2006; RSI, hired by Westmar, entered into a contract

7    for inspection of Wesco's property; that RSI's inspection was inadequate; Gemini relied on

8    RSI's inspection report; Gemini paid Wesco for physical property damage on a per location

9    basis, as well as business interruption benefits; and it was the express third party beneficiary of

10   the written contract between RSI and Westmar.  Among other things, Gemini brought causes of

11   action for rescission against Wesco and for negligence, negligent misrepresentation, equitable

12   indemnity and implied indemnity against Alliant and for breach of written contract and

13   negligence against RSI.  RSI RJN Ex. 4 ¶¶ 21-23, 34-35, 42, 46, 59, 69.

14   RSI demurred to the cross complaint on the ground that there was no written

15   contract, only an invoice and report.  It also argued that Gemini's negligence claim failed

16   because the only duty it alleged stemmed from its status as third party beneficiary to the express

17   written contract between Westmar and RSI.  RSI's Request for Judicial Notice ("RJN"), Ex. 6.

18   Gemini opposed, arguing that the complaint adequately pleaded the existence of a contract

19   between Westmar and RSI and that as it was the only intended beneficiary of the agreement, RSI

20   owed it a duty of care to perform that contract competently.  On January 14, 2011, the state court

21   sustained the demurrer in a brief order, without giving Gemini leave to amend; on January 21,

22   2011, it entered a judgment of dismissal.[3]  RSI RJN Ex. 1-3.

23   

---

24   [3]  The order says, "The demurrer of Cross-Defendant Research Specialists, Inc., to the 4th
Amended Cross-Complaint of Cross-Complainant Gemini Insurance Company came regularly
for hearing on October 20, 2010.  The court, having sustained the demurrer to Gemini Insurance
25   Company's 7th Cause of Action (breach of contract) and 8th Cause of Action (negligence)
contained in its 4th Amended Cross-Complaint without leave to amend, hereby grants judgment
26   in favor of Research Specialists, Inc. and against Gemini Insurance Company as to Gemini's

1       On March 22, 2011, RSI filed a motion for a determination of good faith

2   settlement under California Code of Civil Procedure § 877.6, noting that RSI and Gemini agreed

3   to settle following the entry of judgment, with RSI waiving its costs and the pursuit of a

4   malicious prosecution action against Gemini, and Gemini surrendering its right to appeal the

5   state court judgment.[4]   Alliant and Cranmer RJN, ECF No. 15-2 at 9-14, 20-26.

6       On April 5, 2011, Westmar filed a motion to intervene in the Wesco action,

7   arguing that disposition of the action may impair its ability to protect its interests in the federal

8   action. ECF No. 15-2 at 48-52.  The proposed complaint in intervention asserts a single cause of

9   action for declaratory relief, seeking "[a] determination of the proportionate degree of liability, if

10  any, of the Intervenor, on the one-hand, and the cross-defendants, . . . on the other hand, [as] is

11  necessary to protect the rights of Intervenor against said cross-defendants." ECF No. 15-2 at 57.

12      On April 8, 2011, Alliant filed a motion for a determination of good faith

13  settlement, noting that Gemini and Alliant agreed to dismiss all claims and causes of action in

14  the state action and discharge each other from claims known and unknown. ECF No. 15-2, 31-

15  42.

16  IV.  RSI's Motion To Dismiss

17      RSI argues that the third party complaint is barred by res judicata; that the third

18  party complaint is barred by the *Rooker-Feldman* doctrine; and that the causes of action for

19  /////

20  /////

---

[*sic*] Insurance Company's 4th Amended Cross-Complaint.  Research Specialists, Inc. is entitled
to its costs of suit."  RSI RJN, Ex. 1.

    [4] Under section 877 of the California Code of Civil Procedure, when a release or
dismissal is "given in good faith" to "one or more of a number of tortfeasors claimed to be liable
for the same tort," the release "shall discharge the tortfeasor to whom it is given from all liability
for any contribution to any other tortfeasors."  Section 877.6(a) provides that any party to an
action "shall be entitled to a hearing on the issue of the good faith of a settlement entered into by
the plaintiff and one or more alleged tortfeasors."

equitable relief and for breach of contract do not state claims.  Westmar opposes the motion, but

addresses only RSI's res judicata claim.[5]

> "In California, res judicata precludes a plaintiff from litigating a claim if the claim relates to the same 'primary right' as a claim in a prior action, the prior judgment was final and on the merits, and the plaintiff was a party or in privity with a party in the prior action." *Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366 (9th Cir. 1985).[6]  Under California's primary rights theory:

> [A] cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists of a breach of such primary right and duty. . . .[I]f two actions involve the same injury to plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.

*Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (internal citations, quotations omitted).

"If the 'primary right' sought to be vindicated in a subsequent suit is the same as that in an

earlier suit, the second action will be precluded under California law."  *Maldonado v. Harris*,

370 F.3d 945, 952 (9th Cir. 2004) (quoting *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 903

(2002)).   "Claims not raised in this single cause of action may not be raised at a later date."

*Manufactured Home Communities, Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005);

*In re Marriage of Mason*, 46 Cal.App.4th 1025, 1028 (1996) ("A party cannot by negligence or

---

[5]  As RSI notes, Westmar relies on the law of collateral estoppel rather than res judicata. Although there is significant overlap between the two doctrines, as "collateral estoppel is one of two aspects of the doctrine of res judicata," the latter doctrine, in its narrowest form, prevents parties from relitigating a cause of action while collateral estoppel, a broader doctrine, precludes parties from relitigating issues necessarily decided in prior litigation. *Vandenburg v. Superior Court*, 21 Cal.4th 815, 828 (1999).

[6]  The parties cite federal law.  The original action is a diversity action and the third party complaint is based on this court's supplemental jurisdiction.  28 U.S.C. § 1367.  California law on preclusion applies in these circumstances.  *Jacobs v. CBS Broadcasting*, 291 F.3d 1173, 1177 (9th Cir. 2002).

1  design withhold issues and litigate them in consecutive actions.  Hence the rule is that the prior

2  judgment is *res judicata* on matters which were raised or could have been raised, on matters

3  litigated or litigable.") (internal citation, quotation omitted).

4           Westmar argues it is not precluded by the judgment in the Wesco litigation

5  because the theory of recovery in the state action was that RSI had breached a written agreement

6  between Westmar and RSI, whereas in this action Westmar's cause of action stems from

7  misrepresentations on RSI's website, which influenced Westmar's decision to hire RSI to inspect

8  Wesco's docks.  ECF No. 22 at 4.  RSI argues the ultimate harm in this case was RSI's allegedly

9  negligent inspection of Wesco's docks, which in turn lulled Gemini and Westmar into continuing

10  Wesco's coverage to their ultimate detriment.

11       A.  Primary Right

12           To determine whether the same primary right is involved, the court must focus on

13  "how the injury is defined," which includes "the set of facts, or transaction, from which the

14  injury arose." *Federation of Hillside and Canyon Ass'ns. v. City of Los Angeles*, 126

15  Cal.App.4th 1180, 1203 (2005); *Dunkin v. Boskey*, 82 Cal.App.4th 171, 182 (2000) ("[r]eference

16  must be made to the pleadings and proof in each case") (internal citation, quotation omitted).

17  The primary right -- to be free from the particular injury suffered -- does not depend on the legal

18  theory asserted or the remedy sought.  *Lincoln Prop. Co., N.C., Inc. v. Travelers Indem. Co*., 137

19  Cal.App.4th 905, 912 (2006).  Instead, "the single most important factor in determining whether

20  a single course of conduct has violated more than one primary right is whether plaintiff suffered

21  injury to more than one interest." *L.A. Branch NAACP v. L.A. Unified School Dist*., 750 F.2d

22  731, 738 (9th Cir. 1984).

23           As noted, Westmar claims that the third party complaint is based on RSI's alleged

24  misrepresentation on its website, which caused Westmar to hire RSI to perform the dock

25  inspection.  This characterization does not give rise to a different cause of action; even though

26  Westmar has phrased the claim differently here, it is ultimately based on Westmar's right to a

10

competent dock inspection, whether undertaken in conformance with the representations on the website or the requirements of contract. *See Alpha Mechanical Heating and Air Conditioning, Inc.*, 133 Cal.App.4th 1319, 1332 (2005) ("RAS's primary right was its right to competent performance by Alpha, Alpha's primary duty was to competently perform under the contract, and Alpha's wrong was its negligent or wrongful performance, assertedly resulting in properly damage"); *see also Lincoln Prop. Co.,* 137 Cal. App.4th at 915 (fact that insurer's promise to defend stems from contract and from implied covenant of fair dealing does not give rise to two causes of action, because the harm from breach of the duty to defend and the breach of the implied covenant is the same); *Mycogen Corp.*, 28 Cal. 4th at 907-08 (in breach of contract action, primary right was to be free from all the injuries arising from a particular breach). Whether Westmar was convinced to hire RSI because of the misrepresentations on RSI's website or whether RSI simply did not competently perform its contracted-for service, the injury to Westmar flowed from the results of that inspection. The primary right is the same.

B. Finality

In California a judgment sustaining a demurrer has preclusive effect. *Morris v. County of Tehama*, 795 F.2d 791, 794 n.3 (9th Cir. 1986). "[A] judgment sustaining a demurrer will operate as a bar to a subsequent action if the new complaint states the same facts, and the sustention is based on substantive grounds rather than on formal matters of pleading." *Id.* (quoting *Goddard v. Security Title Insurance & Guarantee Co.*, 14 Cal.2d 47, 52 (1939)).

The good faith settlement proceedings do not change this result, as RSI and Gemini are not seeking to reopen the judgment but rather to resolve the issue of costs and RSI's potential malicious prosecution action against Gemini.

C. Privity

In California, the concept of privity "is not a clearly defined concept." *Jones v. Bates*, 127 F.3d 839, 848 (9th Cir. 1997). California courts apply the doctrine when "'the nonparty has an identity of interest with, and adequate representation by, the party in the first

11

action and the nonparty should reasonably expect to be bound by the prior adjudication.'" *City of Martinez v. Texaco Trading & Transp., Inc*., 353 F.3d 758, 764 (9th Cir. 2003) (quoting *Helfand v. Nat'l. Union Fire Ins. Co.*, 10 Cal. App. 4th 869 (1992)); *Sutton v. Golden Gate Bridge, Highway & Transp. Dist.*, 68 Cal. App. 4th 1149, 1155 (1999)[7] (quoting *Clemmer v. Hartford Insurance Co.,* 22 Cal. 3d 865, 875 (1978)).  The "reasonable expectation" prong of the showing may be met "if the party to be estopped had a proprietary interest in and control of the prior action, or if the unsuccessful party in the first action might fairly be treated as acting in a representative capacity for the party to be estopped."  *Nein v. HostPro, Inc.*, 174 Cal. App. 4th 833, 846 (2009).  The "adequate representation prong" is met for purposes of privity when the interests of the party to be bound are similar to those of the party litigating and when the litigating party had a strong motive to assert that common interest.  *Mooney v. Caspari*, 138 Cal. App. 4th 704, 739-40 (2006).  Ultimately the court must determine whether it is practical and fair to bind a party with the results of a lawsuit in which it was not a participant.  *Aronow v. LaCroix*, 219 Cal. App. 3d 1039, 1048-49 (1990) (privity depends on a determination whether in light of competing policy determinations preclusion is fair); *Columbus Line, Inc. v. Gray Line Sightseeing Companies Associated, Inc*., 120 Cal. App. 3d 622, 629-30 (1981) ("[i]n determining the existence of privity, (t)he emphasis is not on a concept of identity of parties, but on the practical situation.  The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion") (internal citation, quotation omitted); *Paramount Farms, Inc. v. Ventilex B.V.*, 735 F.Supp.2d 1189, 1206 (E.D. Cal. 2010) (court should examine "the practicalities of the situation" to determine privity) (internal citation, quotation omitted).

/////

---

[7]  Although *Sutton* was a collateral estoppel case, California courts define the concept of privity the same whether for collateral estoppel or res judicata purposes.  *Citizens for Open Access To Sand And Tide, Inc. v. Seadrift Assn.* 60 Cal. App. 4th 1053, 1069 (1998).

1    RSI argues that Westmar is in privity with Gemini because it controlled the

2   Wesco litigation in state court and its insurer paid half of the settlement amount.  Both

3   Westmar's and Gemini's complaints explain the relationship between the parties:  As part of its

4   PAA with Gemini, Westmar agreed to defend, indemnify and hold Gemini harmless for any of

5   Westmar's negligent or willful acts, errors or omissions or those of Westmar's brokers,

6   employees or representatives.  ECF No. 1 ¶ 7.  When Wesco sued Gemini, Westmar agreed to

7   indemnify and defend Gemini.  ECF No. 1 ¶ 17; ECF No. 10 ¶ 19.  Westmar's defense of

8   Gemini shows that the two are in privity for purposes of the action against RSI.  *Aronow*, 219

9   Cal.App.3d at 873 (a party's control over the litigation that produced the preclusive decision

10  supports a finding of privity, even when that control is not complete).  Moreover, Gemini and

11  Westmar had the same interest in pursuing RSI: both sought to hold it responsible for an

12  allegedly slipshod inspection which influenced Westmar to provide Gemini's Aqua-Pac

13  insurance to Wesco when it otherwise might not have done so.  As Gemini had a strong motive

14  to pursue the claim after settling with Wesco, Westmar's interests were adequately represented

15  for purposes of privity.  *Aronow*, 219 Cal. App. 3d 1039 at 1049 (adequate representation judged

16  by determining whether losing party had motive to assert the common interest in prior litigation).

17  Finally, Westmar will not be denied due process by the application of res judicata due to its

18  participation in the prior suit and the identity of its interests with Gemini's interests.

19  V.  Alliant's And Cranmer's Motion To Dismiss Or Stay

20    Relying on *Colorado River Water Conservation District v. United States*, 424

21  U.S. 800 (1976), Alliant and Cranmer ask this court to stay or dismiss the third party action

22  against them in light of the pending action in state court.  ECF No. 15-1 at 5-9.  Westmar

23  opposes, arguing there are no exceptional circumstances justifying abstention.  ECF No. 21.

24    In *Colorado River*, the Court recognized that while federal courts have a

25  "virtually unflagging obligation [] to exercise the jurisdiction given them," abstention may be

26  appropriate in exceptional circumstances.  *Colorado River*, 424 U.S. at 813, 817.  "Generally, as

13

between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" *Id*. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).  In deciding whether a stay is appropriate in the face of a parallel proceeding, courts must consider "'[wise] judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"  *Id*. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).  However, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id*. at 818.

The court's "task is to ascertain whether the 'clearest of justifications' counsel the *surrender* of [federal] jurisdiction."  *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis in original).  The court should consider these factors in deciding whether to stay or dismiss a case:  "(1) whether either court has assumed jurisdiction over a *res*;[8] (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; [] (4) the order in which the forums obtained jurisdiction[;] (5) whether state or federal law controls; and (6) whether the state proceeding is adequate to protect the parties' rights." *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989) (internal citations omitted).  Other factors include the prevention of forum shopping and the substantial similarity of the two proceedings; exact parallelism of the actions is not required.  *Smith v. Central Arizona Water Conservation District*, 418 F.3d 1028, 1033 (9th Cir. 2005); *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368, 1372 (9th Cir. 1990).

"[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important

---

[8] As the present case does not involve property, this factor is not applicable here and will not be analyzed.

1   factors as they apply in a given case, with the balance heavily weighted in favor of the exercise

2   of jurisdiction. The weight to be given to any one factor may vary greatly from case to case,

3   depending on the particular setting of the case." *Cone*, 460 U.S. at 16. "Any doubt as to

4   whether a factor exists should be resolved against a stay, not in favor of one." *Travelers Indem.*,

5   914 F.2d at 1369.

6         A.     Relative Convenience of Forums

7          Apart from Gemini, the parties appear to be from Southern California, which

8   makes the state court litigation in Ventura County slightly more convenient.

9         B.     Desirability of Avoiding Piecemeal Litigation

10         "'Piecemeal litigation occurs when different tribunals consider the same issue,

11   thereby duplicating efforts and possibly reaching different results.'" *Travelers Indem.*, 914 F.2d

12   at 1369 (quoting *American Int'l Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th

13   Cir. 1988)).

14         While conceding that the two actions arise out of the same set of facts, Westmar

15   argues that this factor does not favor abstention because this court will still have to resolve

16   Gemini's underlying suit and because Westmar's intervention in the good faith settlement

17   proceedings in state court will not resolve Westmar's breach of contract claim against Alliant,

18   raised in this action.

19         Neither party has cited any case law requiring a court to abstain in a third party

20   action when the underlying action will not be stayed.  In *1443 Chapin Street, LP v. PNC Bank*,

21   718 F. Supp. 2d 78 (D. D.C. 2010), the court considered this question.  Among other things, it

22   observed that the "risk of piecemeal litigation" would not be averted by a stay of the third party

23   complaint because the issues in the original action and in the defendant's counterclaim would

24   proceed and "will likely require the Court to decide many of the same factual and legal issues

25   presently before the Baltimore County Circuit Court.  As such, abstention will not substantially

26   reduce or avoid the risk of piecemeal litigation and conflicting judgments." *Id*. at 84; *but see*

1  *Franklin Commons East Partnership v. Abex Corp.*, 997 F. Supp. 585, 591 (D.N.J. 1998) ("to

2  allow the presence of a subordinate claim [in the third party complaint] to preclude abstention

3  when it is otherwise so clearly warranted would undermine the principles of *Colorado River*").

4  Although not addressing a stay of a third party action only, the Ninth Circuit has said that when

5  there is "substantial doubt" that the state action would resolve the claims in the federal

6  proceeding, a stay would not be appropriate.  *Smith v. Central Arizona Water Conservation*

7  *Dist.*, 418 F.3d at 1033-34.  On the other hand, when there is a risk that two actions will interpret

8  an insurance policy differently, abstention or dismissal is appropriate.  *Liberty Mutual Ins. Co.*

9  *v. Foremost-McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir. 1985); *Franklin Commons*, 997 F.

10  Supp. at 590.

11            The Wesco action, raising breach of contract and breach of the covenant of good

12  faith and fair dealing against Gemini, involves an interpretation of the Gemini policy issued

13  through Gemini's agent, Westmar.  Nevertheless, Westmar's intervention in the Wesco action

14  suggests that the duties and obligations stemming from the PAA and the agreement between

15  Westmar and Alliant will also be at issue, just as they are in the third party complaint in this

16  action.  Although this might counsel abstention, the impact of the possible duplication is less

17  compelling in light of the fact that the underlying Gemini action in this court will proceed,

18  raising some of the questions before the state court.  In light of the fact that this court will

19  resolve some of the same issues as the state court even if it abstains in the third party action, and

20  the fact that the state action will not resolve Westmar's breach of contract claim against Alliant

21  and Cranmer, abstention will not promote the avoidance of piecemeal litigation.  This conclusion

22  is bolstered by the fact that the parties have not identified any policy suggesting that piecemeal

23  litigation is anathema.  *Cf. Colorado River*, 424 U.S. at 819 (clear federal policy against

24  piecemeal litigation to determine water rights, similar to avoiding inconsistent decisions

25  regarding property).

26  /////

1    Ultimately, because this court will proceed with the underlying case, this factor

2 weighs against a stay. *Cone*, 460 U.S. at 28 ("the decision to invoke *Colorado River* necessarily

3 contemplates that the federal court will have nothing further to do in resolving any substantive

4 part of the case, whether it stays or dismisses").

5    C.  Order in Which Forums Obtained Jurisdiction

6    "'Priority should not be measured exclusively by which complaint was filed first,

7 but rather in terms of how much progress has been made in the two actions.'" *Travelers*

8 *Indem.*, 914 F.2d at 1370 (quoting *Cone*, 460 U.S. at 21).

9    Gemini filed this action more than a year after Wesco filed its action in state

10 court.  Westmar filed its third party complaint here on February 17, 2011 but did not seek to

11 intervene in the state court action until April 2011, to challenge RSI's and Gemini's good faith

12 settlement.  At the time Alliant and Cranmer filed their motion to stay, there had been little

13 progress in either action, at least as to Westmar's participation in the underlying action.

14    Once again, neither side has cited any case law discussing how to evaluate this

15 factor when the motion to stay relates only to a third party action, which has not been pending as

16 long as the original action.  In *Parfait v. Nabors Offshore Drilling, Inc*., 46 F. Supp. 2d 677, 680

17 (S.D. Ind. 1999), the court looked at the filing dates of the state action and the third party

18 complaint and noted that the litigation in the federal forum had "continued unabated with respect

19 to both this claim and the underlying personal injury claim," while the state action, though filed

20 before the third party complaint, had not progressed as far.  On the other hand, in determining

21 whether actions were parallel for purposes of *Colorado River* abstention, the court in *Parfait*

22 concluded that it must consider the whole action, not just the third party complaint subject to the

23 stay, in deciding whether abstention was appropriate.

24    Here, comparison of the progress of the federal action to the progress of the entire

25 state action slightly favors abstention, in light of the state court's resolution of substantial pieces

26 of this litigation.

D.  Controlling Law

The parties agree that California law controls the disposition of this action, a factor which favors abstention:  as only state law claims are pled, there are no federal law issues that weigh against surrender of jurisdiction.  *See Cone*, 460 U.S. at 26.

E.  Adequacy of State Court

The Ninth Circuit has said that "[t]his factor involves the state court's adequacy to protect federal rights, not the federal court's adequacy to protect state rights," *Travelers Indem.*, 914 F.2d at 1370; as this case does not involve any federal rights, this factor is neutral.

F.  Forum Shopping

"In the *Colorado River* context, [the Ninth] Circuit has held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Travelers Indem.*, 914 F.2d at 1371.  Each side accuses the other of forum shopping, although nothing in the pleadings suggests that this is true, given that neither chose the federal court in the first instance.  This factor is neutral.

G.  Similarity of the Actions

Proceedings are "substantially similar when 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'"  *Sabbag v. Cinnamon*, No. 5:10-cv-02735-JF (HRL), 2010 WL 8470477 at *5 (N.D. Cal. Dec. 10, 2010) (quoting *Travelers Cas. and Sur. Co. of America v. Comerica Bank*, No. CIV. S-08-366 FCD/KJM, 2009 WL 2136922, at *3 (E.D.Cal. July 15, 2009) (quoting *Interstate Material Corp.*, 847 F.2d at 1288)).  Thus, "application of the *Colorado River* doctrine does not require an exact duplication of the parties involved or the claims asserted."  *Id*. at 15.  Westmar concedes the similarity of the actions, which favors abstention.

Although the similarity of the actions, the progress of the state case, the reliance on state law to resolve the case, and the convenience of the parties favors abstention, the fact that

1   this court will proceed with Gemini's action against Westmar and may have to return to the third

2   party action to resolve Westmar's breach of contract claim against Alliant and Cranmer counsels

3   against a surrender of jurisdiction over the third party action.  As the Supreme Court has

4   cautioned that a court should dismiss or stay an action only in exceptional circumstances, the

5   presence of this latter factor means this case is not the exceptional one requiring abstention or

6   dismissal.

7   VI.  <u>Scottsdale's Motion To Intervene</u>

8           Scottsdale argues that it is entitled to intervene as a matter of right or, in the

9   alternative, seeks permission to intervene, because it is Westmar's subrogee and is entitled to

10  recover the costs it incurred defending the Wesco action.  Gemini, Alliant and Cranmer, and RSI

11  all oppose the motion.

12       A.  Intervention by Right

13          Federal Rule of Civil Procedure 24(a)(2) governs intervention by right:  "On

14  timely motion, the court must permit anyone to intervene who . . . claims an interest relating to

15  the property or transaction that is the subject of the action, and is so situated that disposing of the

16  action may as a practical matter impair or impede the movant's ability to protect its interest,

17  unless existing parties adequately represent that interest."

18          Under Ninth Circuit authority, this court applies a four-part test under Rule 24(a):

19  "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly

20  protectable' interest relating to the property or transaction that is the subject of the action; (3) the

21  applicant must be so situated that the disposition of the action may, as a practical matter, impair

22  or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not

23  be adequately represented by the existing parties in the lawsuit." *Southwestern Center for*

24  *Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) ("*Berg*").  Although Rule 24(a) is

25  construed "liberally in favor of potential intervenors," it is the proposed intervenor's burden to

26  /////

19

1   show it satisfies the rule's requirements.  *Id.*, 268 F.3d at 818; *Prete v. Bradbury*, 438 F.3d 949,

2   954 (9th Cir. 2006).

3          Scottsdale argues that as Westmar's subrogee, it is entitled to recover its costs to

4   defend and settle the Wesco action, costs which were incurred in whole or in part as the result of

5   the improper conduct of Gemini, Alliant, Cranmer, RSI and MCS.  It cites several cases that

6   have found a subrogee entitled to intervene as a matter of right.  *See, e.g., Cummings v. United*

7   *States*, 704 F.2d 437 (9th Cir. 1983).

8          Subrogation is the substitution of another person in place of the
           creditor or claimant to whose rights he or she succeeds in relation
9          to the debt or claim. In the case of insurance, subrogation takes the
           form of an insurer's right to be put in the position of the insured in
10         order to pursue recovery from third parties legally responsible to
           the insured for a loss which the insurer has both insured and paid.
11         The subrogated insurer is said to stand in the shoes of its insured,
           because it has no greater rights than the insured and is subject to
12         the same defenses assertable against the insurer.  Thus, an insurer
           cannot acquire by subrogation anything to which the insured has
13         no rights, and may claim no rights which the insured does not
           have.

14

15  *Interstate Fire and Casualty Ins. Co. v. Cleveland Wrecking Co.*, 182 Cal. App. 4th 23, 31-32

16  (2010) (internal citation, quotations omitted).  As Scottsdale argues, its position as Westmar's

17  subrogee permits it to pursue the proposed defendants for their role, if any, in its losses in

18  defending the Wesco action, which gives it a significantly protectable interest in this litigation.

19  Nevertheless, the court cannot determine whether Scottsdale is entitled to intervene as a matter

20  of right, as Scottsdale has not addressed the other factors of the Ninth Circuit's formulation: it

21  has not explained, for example, why its interests will not be protected by Westmar's participation

22  or why the resolution of this case without Scottsdale's participation will impair its ability to

23  pursue its interests later.  As the proposed intervenor has not addressed the necessary

24  prerequisites to show entitlement to intervene as a matter of right, the court declines to analyze

25  them on Scottsdale's behalf.

26  /////

B.  Permissive Intervention

Under Rule 24(b)(1)(B), the court may permit anyone to intervene who, on timely motion, "has a claim or defense that shares with the main action a common question of law or fact."  In exercising its discretion under this rule, the court must consider whether there is an independent basis for jurisdiction over the proposed intervenor's claims, whether the motion is timely, and whether there is a common question of law or fact between the movant's claim or defense and the main action.  *Freedom From Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).  The court also must examine "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  It is the proposed intervenor's burden to show that it satisfies these requirements.  *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

Once again, Scottsdale as the proposed intervenor has not acknowledged these requirements, apart from arguing that as subrogee it has a claim that shares common questions of law and fact with the current third party action.  Once again, the court declines to undertake an analysis Scottsdale has not addressed.

IT IS THEREFORE ORDERED that:

1.  Third party defendant RSI's motion to dismiss (ECF No. 18) is granted;

2.  Third party defendants Alliant's and Cranmer's motion to dismiss or stay (ECF No. 15) is denied; and

3.  Proposed fourth party plaintiff Scottsdale's motion to intervene (ECF No. 28) is denied.

DATED:  July 17, 2012.

_____
UNITED STATES DISTRICT JUDGE