IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEMINI INSURANCE COMPANY, a corporation, | |
| Plaintiff, | No. CIV S-10-3172 KJM JFM |
| vs. | |
| WESTERN MARINE INSURANCE SERVICES CORPORATION, a California corporation, | |
| Defendant. / | |
| WESTERN MARINE INSURANCE SERVICES CORPORATION, a California corporation, | |
| Third-party Plaintiff, | |
| vs. | ORDER |
| ALLIANT INSURANCE SERVICES, INC., a corporation, DAVID CRANMER, an individual, and RESEARCH SPECIALISTS, INC., a corporation | |
| Third-party Defendants. / | |

1

Scottsdale Indemnity Company ("Scottsdale") filed a motion to intervene in the above-captioned case on January 8, 2013. (ECF 45.) For the reasons set forth below, Scottsdale's motion is GRANTED.

I.  BACKGROUND

On November 23, 2010, Gemini Insurance Company ("Gemini") filed a complaint against Western Marine Insurance Services Corporation ("Westmar"), an insurance brokerage specializing in marine insurance, alleging causes of action for breach of contract and negligence. (ECF 1.) On February 17, 2011, Westmar answered Gemini's complaint and filed a Third Party Complaint against Alliant Insurance Services, Inc. ("Alliant"), David Cranmer, and Research Specialists, Inc. ("RSI"), alleging causes of action for indemnity and breach of contract. (ECF 9, 10.) The court granted RSI's motion to dismiss and denied Alliant's and Cranmer's motion to dismiss or stay on July 17, 2012. (ECF 43.) In the same order, the court denied without prejudice Scottsdale's motion to intervene as a fourth party plaintiff against Gemini, Alliant, Cranmer, RSI and Marine Claims Services, Inc ("MCS"), because Scottsdale did not address the Ninth Circuit's standard for intervention as of right or permissive intervention. (*Id.*)

As the factual allegations are detailed in the court's previous order, the court addresses only those facts relevant to Scottsdale's current motion to intervene. Gemini and Westmar entered into a Program Administrator Agreement ("PAA"), through which Westmar had the authority to issue Gemini's insurance policies. (ECF 1 ¶ 7.) Westmar issued a Gemini policy to Wesco providing property and business interruption coverage for Wesco's marinas in southern California, which Wesco obtained through its insurance broker, Alliant and its agent Cranmer. (*Id.* ¶¶ 8-12; ECF 10 ¶¶ 5, 9.) In or around December 2006, Wesco submitted a claim under its Gemini policy through third-party administrator MCS. (ECF 1 ¶ 14; ECF 10 ¶ 17.) Wesco sought compensation for storm damage to two marinas, claiming a total loss and seeking replacement coverage in the amount of $2,340,000 and business interruption coverage in the

1  amount of $500,000.  (Proposed Fourth-Party Compl. ¶ 18, ECF 45-1.)  In or around March
2  2008, Gemini paid Wesco $510,000 as replacement coverage and $140,000 as business
3  interruption coverage.  (*Id.* ¶ 20.)
4         On February 4, 2009, Wesco filed suit against Gemini in state court seeking the
5  maximum coverage allowed under the policy.  (ECF 1 ¶ 16.)  Westmar agreed to defend and
6  indemnify Gemini in the action, as provided by the terms of the PAA.  (*Id.* ¶ 17.)  The state court
7  suit settled, with Gemini paying $950,000 toward settlement and $28,000 in attorneys' fees.  (*Id.*
8  ¶¶ 18-19.)  Scottsdale paid for Westmar's defense of Gemini under the terms of an insurance
9  brokerage errors and omissions policy between Westmar and Scottsdale.  (ECF 45-1 ¶ 24.)
10        Scottsdale now moves to intervene, to file claims for common law
11 indemnification against Gemini, Alliant, Cranmer and MCS, claims for breach of contract
12 against Gemini, Alliant and Cranmer, claims for breach of the duty of good faith and fair dealing
13 against Gemini, Alliant and Cranmer, and claims for negligence against Gemini, Alliant,
14 Cranmer and MCS.  (*Id.* ¶¶ 29-69.)  Scottsdale's proposed complaint states it is "a contractual
15 and equitable subrogee to the rights of [Westmar]."  (*Id.* ¶ 3.)
16        Westmar filed a statement of non-opposition to Scottsdale's motion.  (ECF 47.)
17 Gemini filed an opposition to the motion "to the extent that the Proposed Complaint alleges
18 counts against Gemini for breach of contract and breach of the covenant of faith and fair
19 dealing." (ECF 46 at 2.)  Gemini does not oppose Scottsdale's intervention to allege common
20 law indemnification and negligence claims.  (*Id.*)
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////

I.   ANALYSIS

    A.   Standard

        Federal Rule of Civil Procedure 24(a) provides in pertinent part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a). The court applies a four-part test to determine whether intervention of right is proper under Rule 24(a): "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). Rule 24(a) is construed "liberally in favor of potential intervenors." *Id.* at 818.

    B.   Analysis

        1.   Protectable Interest Prong

        Scottsdale asserts that its desire to protect its subrogation rights gives it a protectable interest in the litigation. (Mem. of P. &A., ECF 45-1 at 8.) In the context of reversing the denial of an insurance company's motion to intervene, the Ninth Circuit has stated that "[b]ecause the insurance company as subrogee stands in the shoes of the insured, it is the real party in interest in the insured's suit to the extent of the subrogation." *Cummings v. United States*, 704 F.2d 437, 439 (9th Cir. 1983). Gemini urges the court to deny Scottsdale's motion to intervene to make claims for breach of contract and breach of the covenant of good faith and fair dealing, asserting "each of the counts is a sham and is frivolous." (Opp'n, ECF 46 at 2.) Specifically, Gemini argues that Scottsdale cannot assert the claim for breach because it was not

4

a party to the PAA and cannot assert the claim for tortious bad faith because the contract at issue is not an insurance contract. (*Id.* at 3-4.)

In reviewing whether proposed intervenors have a protectable interest, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Berg*, 268 F.3d at 820. In *Berg*, a group of building trade associations moved to intervene in a conservation group's challenge to the City of San Diego's land management plan for protecting endangered species. *Id.* at 817. The plan gave the City the power to designate "Third Party Beneficiary status" to projects that meet certain criteria for protecting biological resources, which would give those projects authority to conduct incidental takes of endangered species. *Id.* at 816. The district court denied the motion to intervene on the grounds that the building trade associations had failed to demonstrate that they had Third Party Beneficiary status or would be otherwise affected by the outcome of the action, meaning they did not meet the protectable interest prong, although the associations had alleged these interests and provided evidence in support in moving to intervene. *Id.* at 818-19. The Ninth Circuit reversed, explaining that "a district court is required to accept as true the non-conclusory allegations made in support of an intervention motion." *Id.* at 819.

The rule articulated in *Berg* does not require the court to assess whether Scottsdale's claims will succeed, only whether Scottsdale has misrepresented the facts showing it has some protectable interest related to the litigation. Here, Gemini does not contest Scottsdale's factual assertions showing that Scottsdale's interests would be affected by the outcome of the litigation. Gemini's claim that Scottsdale's anticipated causes of actions are sham or fraud is therefore not a reason to deny Scottsdale's motion to intervene. Moreover, as Scottsdale argues, courts do not consider the merits of proposed intervenors' claims when resolving motions to intervene. (ECF 51 at 3); *Zurich Am. Ins. Co. v. ACE Am. Ins. Co.*, No. CIV-S-11-0881 KJM-DAD, 2012 WL 3884695, at *3 (E.D. Cal. Sept. 6, 2012); *E.E.O.C. v.*

*Giumarra Vineyards Corp.*, No. 1:09-CV-02255-OWW-SKO, 2010 WL 3220387, at *7 (E.D. Cal. Aug. 13, 2010). In sum, Scottsdale has shown it has a protectable interest in the litigation.

2. Remaining Prongs

Scottsdale has filed its motion to intervene before the status conference and no party has asserted that it is prejudiced by the motion to intervene. In terms of potential impairment of Scottsdale's interests, Scottsdale argues that it "may ultimately bear responsibility for any judgment obtained by Gemini," which the other parties do not dispute. (ECF 45-1 at 11.) Scottsdale has satisfied these factors of the intervention of right test.

Regarding adequacy of representation by existing parties, the court must consider three factors when evaluating the adequacy of representation: (1) whether the present parties will "undoubtedly make all of the intervenor's arguments;" (2) whether the present parties can and will make those arguments; and (3) whether the proposed intervenor "offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). The most important factor is "how the interest compares with the interest of existing parties," *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), because "[i]f an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises," *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). To rebut this presumption, the proposed intervenor must make a "compelling showing" of inadequacy. *Id.* (citing *Arakaki*, 324 F.3d at 1086).

Scottsdale concedes that Westmar's interests and Scottsdale's interests are largely aligned. (ECF 45-1 at 10.) However, as Scottsdale argues, Westmar does not make the same claims that Scottsdale plans to make. (*Id.*) Westmar has not alleged claims against Gemini or MCS. (*See* ECF 10.) This element of the intervention of right test is met.

/////

/////

/////

1  In conclusion, Scottsdale has shown that it meets the requirements to intervene
2  under Rule 24(a).  Accordingly, Scottsdale's motion to intervene is GRANTED.
3  DATED:  February 28, 2013.

    _____
    UNITED STATES DISTRICT JUDGE