UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEMINI INSURANCE COMPANY, a corporation,<br>　　　　　Plaintiff,<br>　　vs.<br>WESTERN MARINE INSURANCE SERVICES CORPORATION, a California corporation,<br>　　　　　Defendant.　　　　　/ | No. 210-cv-03172-KJM-JFM<br><br>ORDER |

  This matter is before the court on defendant's motion for leave to file a first amended answer. This matter was decided without a hearing. For the following reasons, defendant's motion is DENIED.

I. FACTS AND PROCEDURAL HISTORY

  Plaintiff alleges effective July 1, 2004 that plaintiff and defendant entered into a contract entitled "Program Administrator Agreement" ("PAA") appointing defendant to administer, underwrite, and issue insurance policies insured by plaintiff. (Compl. ¶ 7, ECF 1.) Plaintiff also alleges defendant "[a]greed to defend, indemnify and hold Gemini harmless from

1

1  and against all claims, actions, causes of action, liability or loss which result from any real or
2  alleged negligent or willful acts, errors, or omissions of Westmar, or the servants, employees,
3  representatives, producers, or brokers of Westmar in the performance of breach of duties under
4  the PAA." (*Id.*)

5  Defendant issued plaintiff insurance policy number WGP0000073-00 to Wesco
6  Sales Corporation ("Wesco") with a term of August 6, 2004 to August 6, 2005. (*Id.*) The policy
7  included blanket coverage for all of Wesco's locations. (*Id.*)  However when Wesco renewed its
8  policy the following year, the renewed policy did not include blanket coverage, instead including
9  limits based on per location coverage. (*Id.*) Under the renewed policy Wesco made a claim to
10 plaintiff for damage to Wesco docks, unaware the renewed policy did not include blanket
11 coverage. (*Id.*) When Wesco did not receive blanket coverage for its claim, it filed an action
12 against plaintiff for breach of contract and breach of the covenant of good faith and fair dealing.
13 (*Id.* at 4.) Plaintiff settled with Wesco, and agreed to pay Wesco $950,000. (*Id.*) Plaintiff alleges
14 on May 7, 2009, defendant agreed to indemnify plaintiff for the settlement with Wesco. (*Id.*)
15 Plaintiff now alleges defendant is in breach of contract for refusing to indemnify plaintiff's
16 settlement with Wesco, and was negligent in failing to notify Wesco the renewal policy would
17 not include blanket coverage. (*Id.* at 4-5.)

18  In defendant's original answer to plaintiff's complaint, defendant admitted it
19 "[e]ntered a Program Administrator Agreement with Gemini effective July 1, 2004." (Answer
20 ¶ 7, ECF 9.) In defendant's proposed amended answer, defendant admits it entered into a
21 "Program Administrator Agreement" (PAA) with Berkeley Underwriting Partners LLC
22 (Berkeley) effective July 1, 2004, but denies entering the PAA with Gemini. (Proposed Am.
23 Answer ¶ 7, ECF 54.)  Defendant asserts the admission in the first answer was a mistake, based
24 on a prior attorney's work referring to both Berkeley and Gemini collectively as "Gemini."

1  (Decl. of Steven W. Yuen ¶ 7, ECF 54-1). Plaintiff asserts the defendant's proposed amendment
2  would be futile as by "entering into an agreement with Gemini's agent, BUP [Berkeley],
3  Westmar also entered into an agreement with Gemini." (Opp'n to Mot. for Leave to Am. Answer
4  ¶ 2, ECF 59). Defendant argues the proposed amendment supports their defense that plaintiff
5  lacks standing to sue, and thus would not be futile. (Reply to Opp'n to Mot. for Leave to Am.
6  Answer ¶ 3, ECF 62.)

7  Plaintiff filed the original complaint with this court on November 23, 2010.
8  Defendant filed its original answer on February 17, 2011. On March 18, 2013 defendant filed a
9  motion for leave to file its first amended answer according to Federal Rule of Civil Procedure 15
10 (a)(1)(B)(2). On April 9, 2013, plaintiff filed its opposition to defendant's motion for leave to
11 amend, and on April 19, defendant its reply.

12 II.  STANDARD

13 Federal Rule of Civil Procedure 15(a)(2) states "[t]he court should freely give
14 leave to [to amend its pleading] when justice so requires" and the Ninth Circuit has "stressed
15 Rule 15's policy of favoring amendments." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d
16 1149, 1160 (9th Cir. 1989). "In exercising its discretion [regarding granting or denying leave to
17 amend] 'a court must be guided by the underlying purpose of Rule 15 -- to facilitate decision on
18 the merits rather than a pleading or the technicalities.'" *DCD Programs, Ltd. v. Leighton*,
19 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.
20 1981)). However, "the liberality in granting leave to amend is subject to several limitations.
21 Leave need not be granted where the amendment of the complaint would cause the opposing
22 party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue
23 delay." *Ascon Properties*, 866 F.2d at 1160 (internal citations omitted).
24 /////

1 Here, the PAA contains a choice-of-law provision designating Illinois state law as
2 controlling. (Compl., Ex. 1, ¶ 10.5, ECF 1.)  "When a federal court sits in diversity, it must look
3 to the forum state's [California] choice of law rules to determine the controlling substantive
4 law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). "When parties to a contract bargain for
5 an explicit choice of law provision, courts applying California's choice-of-law rules are guided
6 by the California Supreme Court's decision in *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th
7 459 [] (1992)." *Nuvo Research Inc. v. McGrath*, C 11-4006 SBA, 2012 WL 1965870, at *3 (N.D.
8 Cal. 2012).

9 In *Nedlloyd,* the California Supreme Court determined that the proper test for
10 determining whether to enforce a choice of law provision is: (1) whether the chosen state has a
11 substantial relationship to the parties or their transaction, or (2) whether there is any other
12 reasonable basis for the parties' choice of law. *Nedlloyd,* 3 Cal. 4th at __.  If either of these two
13 prongs is satisfied, the court must determine whether the chosen forum's law is contrary to a
14 fundamental policy of California. *Id.* If there is no conflict, the court enforces the parties' choice
15 of law. *Id.*

16 Given that Berkeley is listed as a resident of Illinois in the PAA, there is a
17 reasonable basis for the parties to choose Illinois law as controlling. (ECF 1, Ex 1, 15.)
18 Furthermore, nothing in the record indicates enforcing Illinois law would be contrary "to some
19 fundamental principle of justice, some prevalent conception of morals, some deep-seated
20 tradition of the commonweal." *Brack v. Omni Loan Co., Ltd*., 80 Cal. Rptr. 3d 275, 282 (Cal.
21 App. 4th Dist. 2008) (internal citations omitted). Thus, the choice-of-law provision in the PAA is
22 valid and enforceable.

23 However, this court's application of Federal Rule of Civil Procedure 15 is
24 controlling, as the Rule 15 standard for granting leave to amend is procedural. *Goldberg v. Pac.*

*Indem.* Co.. 627 F.3d 752, 755 (9th Cir. 2010); *see also Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996) (Stevens, Scalia dissenting) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). Nevertheless, the question of the futility of the alleged defense is a question of substance; thus, Illinois state law is controlling for that issue alone. *Wetterman v. Monaco Coach Corp.,* 141 F. Supp. 2d 1263, 1264 (D. Or. 2001) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938) for principle that when determining futility of an amendment, state substantive law is controlling).

III.   ANALYSIS

A court may deny leave to amend for several reasons, including (1) a showing of prejudice to the other party, (2) bad faith by the moving party, or (3) futility of the proposed amendment. *See e.g., Bowles v. Reade* 198 F.3d 752, 758 (9th Cir. 1999). Viewing the facts in light most favorable to the moving party as required, nothing in the defendant's motion suggests plaintiff would be prejudiced or the defendant is acting in bad faith in requesting leave to amend, as discussed below.  However, because there is no set of facts that could be proven under the proposed amendment to constitute a valid defense, the amendment is futile.

First, there would be no prejudice to plaintiff in granting defendant's motion to amend. When determining if there is a showing of prejudice, the court will often look to any additional litigation expenses that would be incurred by the nonmoving party, or any undue delay the amendment would cause to litigation. *Ascon Properties*, 866 F.2d at 1160 (internal citations omitted) (moving parties' new theory would impose undue additional discovery costs on opposing counsel, and moving parties' multiple amendments had caused undue delay). Here, neither party has initiated discovery or made their initial disclosures under Federal Rule of Civil Procedure 26. Moreover, this is the defendant's first motion to amend.

/////

Second, the record does not suggest the defendant's amendment is proposed in bad faith. A moving party may be found to be acting in bad faith if the amendment was filed to cause "mere undue delay." *Johnson v. Hewlett-Packard Co.,* 809 F. Supp. 2d 1114, 1122 (N.D. Cal. 2011). For the reasons discussed above, the amendment would not cause undue delay.

However, the proposed amendment would be futile. When determining whether an amended answer would be futile, the court applies the test for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988) (citing *Baker v. P. Far E. Lines, Inc.,* 451 F. Supp. 84, 89 (N.D. Cal. 1978); a proposed amendment is futile only if no set of facts can be proven to support a valid and sufficient claim or defense).

Neither the facts pled in the original answer nor those in the proposed amendment would establish a valid defense for defendant, if proven. Defendant asserts the proposed amendment preserves its fourteenth affirmative defense, that plaintiff lacks standing to sue. Under Illinois law, the agency relationship between plaintiff and Berkeley gives plaintiff standing to sue unless it is excluded as a party by the form or terms of the agreement. *See Lake Shore Mgt. Co. v. Blum*, 235 N.E.2d 366, 368 (Ill. App. 1st Dist. 1968) ("[a] third party who deals with the agent of a partially disclosed principal is liable to the principal unless he is excluded as a party by the forms or terms of the agreement"). Although questions of agency relationship are generally questions of fact left for the jury, if the "parties relationship is so clear as to be undisputed," then agency may be determined as a matter of law. *Citicorp Sav. Of Ill. V. Rucker*, 692 N.E.2d 1319, 1325 (Ill. App. 1st Dist. 1998).

Here, the express terms of the PAA clearly establish the plaintiff is a party to the agreement executed between Berkeley and defendant. Nowhere do the terms of the PAA explicitly exclude the plaintiff from the agreement. The defendant cites paragraph 1 of the PAA,

1  where Berkeley and Western are named as parties to the PAA, as excluding the plaintiff from the

2  agreement. (ECF 62.)  However, paragraph 2 of the PAA expressly identifies Berkeley as the

3  agent of "the insurance companies in exhibit A." (Compl., Ex. 1, ECF 1). The plaintiff is listed

4  as an insurance company in Exhibit A. (*Id.*) Thus, the terms of the PAA do not exclude the

5  plaintiff from the agreement, but rather expressly establish Berkeley as plaintiff's agent.

6  *Compare Wargel v. First Nat. Bank of Harrisburg*, 460 N.E.2d 331, 334 (Ill. App. 5th Dist.

7  1984) (citing *Mills v. State National Bank* 329 N.E.2d 255 (1975) for proposition that agent is

8  generally defined as one who undertakes to manage some affairs to be transacted for another by

9  his authority) *with* PAA, ¶ 3, ("[c]ompany is contracted as the manager of the insurance

10 companies designated in Exhibit A…").  There is a legally sufficient agency relationship giving

11 plaintiff standing to sue whether or not the amended answer is allowed.  *See Lake Shore Mgt. Co*,

12 235 N.E.2d at 368.

13            Second, the form of the PAA does not imply plaintiff's exclusion as a party to the

14 contract. As defendant correctly notes, an integration clause may prevent the use of extrinsic

15 evidence when interpreting the terms of contract. *See L.D.S., LLC v. S. Cross Food, Ltd.,*

16 954 N.E.2d 696, 705 (Ill. App. 1st Dist. 2011).  However, "[a]gency may be established and its

17 nature and extent shown by parol evidence…if the evidence indicates one individual acting for

18 others under circumstances implying knowledge on the part of the supposed principals of such

19 acts, a *prima facie* case of agency is established." *Mateyka v. Schroeder*, 504 N.E.2d 1289, 1294

20 (Ill. App. 5th Dist. 1987) (citation omitted). Moreover, a contract made by an agent in his own

21 name may be shown by parol evidence to be that of the principal "[w]here the transaction relates

22 to the affairs of the principal and not the personal affairs of the agent." *Queen Ins. Co. of Am. v.*

23 *Citro,* 58 F.2d 107, 110 (7th Cir. 1932).

24 /////

As the plaintiff here is the actual provider of the insurance package in dispute, the transaction made by plaintiff's agent Berkeley with defendant directly relates to the plaintiff as Berkley's principal.  Therefore, extrinsic evidence may be used to support finding an agency relationship between Berkeley and plaintiff. *See id.* In both the defendant's original answer to the complaint, and its proposed amended answer, defendant admits to issuing plaintiff's insurance packages to Wesco. Moreover the record indicates defendant issued over 4,000 of plaintiff's insurance policies, making it clear Berkeley was acting on behalf of plaintiff and putting defendant on notice it may be liable to plaintiff. (Decl. of Steven R. Gabor ¶ 3, ECF 59-2.)

Nothing in the form of the PAA, or the surrounding circumstances of the PAA's drafting, establish plaintiff as excluded as a party to the contract between Berkeley and the defendant.  Even if the proposed amendment was allowed, the plaintiff would have standing to sue based on the agency relationship between Berkeley and plaintiff.

IV.   CONCLUSION

Defendant's attempt to amend its answer to the complaint is futile as no set of facts supports the defendant's affirmative defense that plaintiff lacks standing to sue. *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988) (citing *Baker v. P. Far E. Lines, Inc.,* 451 F. Supp. 84, 89 (N.D. Cal. 1978)).  The motion is denied.

IT IS SO ORDERED.

DATED:  August 6, 2013.

_____
UNITED STATES DISTRICT JUDGE