Gary S. Kull (NJ Bar No. 028441987)
*email:  gkull@cmk.com*
Nicholas A. Vytell (NJ Bar No. 024902008)
*email: nvytell@cmk.com*
120 Mountain View Boulevard
Basking Ridge, NJ  07920
Telephone:  908.848.6300
Facsimile:  908.848.6310

Valerie A. Moore (Bar No. 107359)
*email: vmoore@hbblaw.com*
HAIGHT BROWN & BONESTEEL LLP
555 South Flower Street, Forty-Fifth Floor
Los Angeles, California 90071
Telephone:  213.542.8000
Facsimile:  213.542.8100


Attorneys for Fourth-Party Plaintiff
SCOTTSDALE INDEMNITY COMPANY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEMINI INSURANCE COMPANY, a corporation, | Case No.: 2:10-CV-03172-KJM-JFM |
| Plaintiff, | **JOINT PRETRIAL STATEMENT** |
| vs. | |
| WESTERN MARINE INSURANCE SERVICES CORPORATION, a corporation, | |
| Defendant. | |
| WESTERN MARINE INSURANCE SERVICES CORPORATION, a corporation, | |
| Third-Party Plaintiff, | |
| vs. | |
| ALLIANT INSURANCE SERVICES, INC., a corporation, DAVID CRAMNER, an individual, and RESEARCH SPECIALISTS, INC., a corporation, | |
| Third-Party Defendants. | |

1

SCOTTSDALE INDEMNITY COMPANY, a )
2  corporation, as subrogee of Western Marine )
Insurance Service Corporation,            )
3                                          )
           Fourth-Party Plaintiff,         )
4                                          )
                  vs.                      )
5                                          )
GEMINI INSURANCE COMPANY, a               )
6  corporation, ALLIANT INSURANCE          )
SERVICES, INC., a corporation, DAVID      )
7  CRAMNER, an individual, and MARINE      )
CLAIMS SERVICES, INC., a corporation.     )
8           Fourth-Party Defendants.       )

9        GEMINI INSURANCE COMPANY, WESTERN MARINE INSURANCE SERVICES

10  CORPORATION, ALLIANT INSURANCE SERVICES, INC., DAVID CRANMER, MARINE

11  CLAIMS SERVICES, INC., and SCOTTSDALE INDEMNITY COMPANY jointly submit this

12  Pretrial Statement pursuant to Eastern District California Rule 281 and the Court's Minute Order

13  dated January 10, 2017 [Docket Entry No. 156] adopting the parties' proposed format for the

14  within Joint Pretrial Statement.

15  **1.    JOINT STATEMENT OF THE CASE**

16        This case arises out of an underlying lawsuit (the "Underlying Action") brought by

17  Wesco Sales Corporation ("Wesco") against Gemini Insurance Company ("Gemini"), Wesco's

18  insurer, seeking recovery for property damage and loss of business income at two marinas in

19  Oxnard, California.

20        The Gemini policy under which Wesco sought coverage was issued by Western Marine

21  Insurance Services, Inc. ("Western Marine"), pursuant to a Program Administrator Agreement

22  ("PAA") between Western Marine and Berkley Underwriting Partners, Inc. ("Berkley").

23  Scottsdale Indemnity Company ("Scottsdale") is the insurer of Western Marine.

24        Pursuant to the terms of a Claims Administration Agreement ("CAA") with Marine

25  Claims Services, Inc. ("MCS"), Gemini referred the Wesco claim to MCS for investigation and

26  adjustment.  Gemini ultimately paid the per location values for the Wesco claim, as set forth in

27  the Wesco insurance application, in the amounts of $510,000 for property damage and $140,000

28  for loss of income.

1   Notwithstanding the payment by Gemini, Wesco demanded the full limit had the policy
2   been written on a blanket basis for property damage in the amount of $1,780,215.12 and for loss
3   of income in the amount of $360,000.00. The Underlying Action was filed when Gemini refused
4   to pay these additional amounts demanded by Wesco.

5   The Underlying Action asserted causes of action against Gemini for breach of contract
6   and breach of the duty of good faith and fair dealing. Wesco did not sue Alliant or Western
7   Marine in the Underlying Action. Gemini cross-complained against Wesco's broker, David
8   Cranmer and his employer, Alliant Insurance Services, Inc. ("Alliant") and Research Specialists,
9   Inc., a firm hired by Western Marine before the loss to inspect the premises to be insured. RSI
10  successfully demurred and was dismissed as a defendant in the Underlying Action after filing a
11  motion for determination of good faith settlement pursuant to California Code section 877.6.
12  Western Marine made an ex parte application to appear in the Underlying Action for purposes of
13  opposing RSI's good faith settlement motion. Western Marine did not intervene to assert any
14  alleged claims against Alliant or Mr. Cranmer.

15  The Underlying Action ultimately was settled for $1,900,000, with Gemini and
16  Scottsdale each contributing $950,000. The Gemini cross-complaint against Mr. Cranmer and
17  Alliant was dismissed for a mutual waiver and general release of all claims. This action
18  followed.

19  The parties' respective positions regarding liability in this action are set forth more fully
20  below. Briefly, Gemini maintains that Western Marine is liable for the full costs incurred in
21  defending and settling the Underlying Action pursuant to the terms of the PAA. Western Marine
22  denies any liability under the PAA. To the extent any liability is found, however, Western
23  Marine maintains that fault is to be allocated to Alliant.

24  Scottsdale similarly seeks recovery of the costs it incurred in defending and settling the
25  Underlying Action. Scottsdale maintains that Western Marine had no obligation to indemnify
26  Gemini under the terms of the PAA. Scottsdale further maintains that the costs incurred in
27  connection with the Wesco claim were the result of the negligent or wrongful conduct of Gemini,
28  Alliant, and/or MCS. Gemini, MCS, Alliant deny these allegations and seek adjudication of their

1   respective defenses.

2   **2.   JURY-NONJURY**

3       The parties waive trial by jury and consent to trial before Your Honor.

4   **3.   STIPULATED UNDISPUTED FACTS**

5       The parties previously submitted extensive briefing in connection with Gemini's motion

6   for summary judgment [See Docket Entry Nos. 95-102; 111-112; 115-118; 127; 129; 130; 134;

7   135], which culminated in the Court's Order dated June 22, 2016 [Docket Entry No. 142].  In

8   light of the record previously submitted and the extensive findings regarding the undisputed facts

9   contained in the Order, the parties hereby stipulate and agree that the Court's factual findings as

10  contained in the Order are binding and are therefore incorporated by reference herein.

11      Notwithstanding the foregoing stipulation, the parties reserve the right to supplement any

12  facts set forth in the Order at the time of trial.  Further, the parties reserve the right to argue the

13  legal implications to be drawn from those facts, as set forth more fully below.

14      Any additional stipulated undisputed facts that the parties believe are relevant to the

15  disposition of this action are set forth in Section 4.a., below.  Any material facts that any party

16  intends to refute at the time of trial are contained in Section 4.b., below.

17      **a.   Additional Stipulated Undisputed Facts**

18          1.   Cranmer and Alliant had been obtaining insurance as the retail broker for

19  Wesco since 1997.

20          2.   On behalf of Wesco, Cranmer and Alliant requested blanket coverage in

21  the 2004 application submitted to Western Marine.

22          3.   On behalf of Wesco, Cranmer and Alliant requested blanket coverage on

23  the application for the renewal of the Gemini policy in 2005.

24          4.   On behalf of Wesco, Cranmer and Alliant requested blanket coverage on

25  the application for the renewal of the Gemini policy in 2006.

26          5.   The Confirmation of Bind Order for the 2006-2007 policy stated that the

27  insurance coverage for the "piers, wharves, docks, floats" was on an "RC" basis, meaning

28  replacement cost.

1          6.     The 2006-2007 policy was issued on an "ACV" basis, which means actual

2    cash value.

3          7.     On behalf of Gemini, Berkley entered into the CAA with MCS, effective

4    June 1, 2004. MCS acted as a third-party claims administrator on behalf of Gemini.  At all

5    relevant times, in connection with the Wesco claims, MCS acted within the course and scope of

6    the CAA.

7          8.     Dennis Keithley was the adjuster assigned to the Wesco claim on behalf of

8    MCS.  With Gemini's consent and authority under the CAA, Mr. Keithley assigned the claim to

9    Langhammer & Associates ("L&A") for further investigation.

10         9.     MCS concluded that Wesco first reported the claim with the incorrect date

11   of loss only 2 days after the County had agreed to extend the Wesco lease and that, in fact, the

12   initial date of loss was in January 2001 during the time that the property was insured by

13   Lexington Insurance.

14        10.    MCS was not a part of, and was not required to be involved in, the

15   underwriting of any of the policies involved in this case.

16        11.    MCS' limit of authority under the CAA was $50,000.

17        12.    MCS did not, and was not required to, make any of the decisions

18   concerning the conduct of the Underlying Action and specifically what defenses should or

19   should not be raised by Gemini.

20        13.    MCS did not have any authority, and was not authorized, to rescind any of

21   the Gemini policies involved in this case.

22        14.    MCS did not, and was not required to, make the decision about how much

23   money Gemini paid to resolve the Underlying Action.

24        15.    Gemini and Berkley did not have any issues with how MCS handled the

25   Wesco claim.

26        16.    MCS was not directed by Gemini to issue any disclaimers of coverage.

27       **b.**    **Disputed Factual Issues**

28       The parties identify the following disputed factual issues which they believe are relevant

1 | to the disposition of this action.

2 |       **i.**     **Gemini**

3 |      1.     There was no loss to the subject docks in 2003 or 2004.

4 |      2.     Wesco's failure to disclose prior losses at the marinas was not material.

5 |      3.     Berkley acted as an agent of Gemini when entering the PAA and, as such,

6 | Gemini is a party to the PAA, including the indemnification provision.

7 |      4.     The 2004-2005 Policy was issued with the term "BLKT," for blanket

8 | coverage, and "RC," for replacement cost coverage, printed on the declarations page of the

9 | policy for all five Marinas.  The notations of "RC" and "BLKT" on the declarations page were

10 | the only indications in the policy stating that the policy was issued with blanket coverage and

11 | replacement cost coverage.

12 |      5.     RSI's inspection report for 3821 Victoria Avenue was emailed on August

13 | 24, 2005 from RSI to Julie Nease at Western Marine.

14 |      6.     RSI's inspection report for 3615 Victoria Avenue was emailed on August

15 | 29, 2005 from RSI to Julie Nease at Western Marine.

16 |      7.     Western Marine did not provide any specific notice to Wesco or its broker

17 | (Alliant) regarding the change from blanket coverage.

18 |      8.     Western Marine should have followed-up on Wesco's failure to respond to

19 | the questions about physical conditions in the insurance applications.

20 |      9.     The per-location limits of coverage were not stated in the 2006-2007

21 | Policy and could not be determined by reference to the Policy alone.

22 |      10.     The 2006-2007 policy should have been issued in conformity with the

23 | Confirmation of Bind Order on an RC basis for the piers.  The 2006-2007 policy mistakenly

24 | stated that the coverage was on an "ACV" basis.

25 |      11.     The docks at the marinas were a "total loss" as a result of the last storm in

26 | December 27, 2006.

27 |      12.     Joseph Pojman requested that MCS ask Mr. Wollitz to prepare a draft

28 | reservation-of-rights letter to Wesco for his review and approval; however, Mr. Pojman never

1   requested that the letter be sent.

2        13.    Wesco never claimed that any of Gemini's rights were waived by the lack

3   of a reservation of rights letter.

4        14.    Mr. Keithley received an estimate for the replacement cost of the docks at

5   location no. 5 of $2,338,680.00.

6        15.    Mr. Keithley and Ted Brown of Langhammer estimated that the loss

7   should be reduced by 75% for the non-covered causes, leaving 25% of the loss caused by the

8   covered cause of windstorm.  Because 25% of $2,338,680.00 is $584,670.00, even with the 75%

9   reduction, Mr. Keithley calculated that Wesco was entitled to be paid up to the stated value of

10  $285,000.00 for location no. 5 (3821 Victoria), and $225,000.00 for location no. 4 (3615

11  Victoria), for a total of $510,000.00.  Mr. Keithley reported the estimated reduction to Gemini.

12  Accordingly, in September 2007, Gemini agreed to pay Wesco's claim up to the individual limits

13  of the liability, for a total of $510,000.00, although at the time, Wesco demanded blanket

14  coverage.

15       16.    The loss or damage to the docks in 2006 was caused by, or resulted

16  directly from, the windstorm.

17       **ii.**    **Western Marine**

18       1.    As a matter of policy and practice, Cranmer and Alliant reviewed

19  insurance policies to ensure they conformed with the clients' requested coverage before the

20  policy was given to the client.  Cramner and Alliant, however, failed to review the Gemini

21  policies issued to Wesco.

22       2.    Cranmer and Alliant did not provide explanations requested on the

23  checkboxes for "unusual conditions" on the 2004, 2005, and 2006 insurance applications and, as

24  a result, the applications were not complete.

25       3.    Cranmer was advised by Wesco prior to 2006 that loss or damage

26  occurred to Wesco's marinas sometime between 2004-2006; however, he failed to report any of

27  those losses to any insurance carrier.  Cranmer was aware that prior losses were material to

28  insurance carriers.

1         4.    Western Marine only communicated with Cranmer regarding the Wesco

2   policies and did not have any direct communication with Wesco.

3         5.    Cranmer understood that "if an application was not accurate and did not

4   disclose all material information, that could result in problems" for Cranmer's client and that an

5   application that had materially false information "could lead to a rescission of the policy and a

6   loss of coverage."

7         6.    Cranmer did not review the Wesco policies issued by Western Marine to

8   ensure that they matched the applications he submitted on behalf of Wesco.

9         7.    Being provided a copy of the policy that did not have the blanket coverage

10  from one year to the other would constitute notice in writing that there had been a change in the

11  coverage.

12        8.    Cranmer was advised by Wesco that there was prior damage to Wesco's

13  docks unrelated to the Gemini policies, but did not report those losses to an insurance carrier or

14  Western Marine.

15        9.    David Cranmer's custom and practice was to review a confirmation of

16  bind from the surplus lines broker to review coverages and the premium to see if it matched

17  Cranmer's requests in the application. David Cranmer received all the Gemini policies on behalf

18  of Wesco, but did not review them or communicate any changes in the policies to his client.

19        10.    Joseph Pojman had the authority on behalf of Gemini to make decisions

20  on the Wesco litigation and decided to settle Wesco's action on Gemini's behalf and abandon its

21  coverage defenses. Pojman made that decision, among other factors, because Gemini could then

22  proceed to seek indemnity from Western Marine under the PAA.

23        **iii.**    **Scottsdale**

24        1.    The docks at the Marinas suffered from multiple prior losses in 2001 and

25  2003, 2004, or 2005.

26        2.    The docks also suffered from long-term decay, dry rot, fungus, wear and

27  tear, and other long-term preexisting problems prior to the issuance of the 2006 policy.

28        3.    Alliant and David Cramner were advised of prior losses at the Marinas in

1   2004 or 2005.

2   　　　　4.　　As a matter of policy and routine practice, Alliant would report prior
3   losses at an insured location to a carrier with whom it sought to place coverage because it
4   considered it to be a "misrepresentation" not to expose these prior losses.

5   　　　　5.　　Alliant did not report the prior loss at the Marinas on any of the
6   applications for insurance submitted to Western Marine or Gemini and did not otherwise advise
7   Western Marine of these losses.

8   　　　　6.　　Gemini has certified under oath that Wesco and Cramner had an
9   affirmative duty to disclose the prior storm damage and a duty to disclose that the docks suffered
10  from significant long-term decay, dry rot, fungus, wear and tear, and other structural problems
11  pursuant to the policy as well as California Insurance Code Sections 330 - 335,338, 350-56, 358-
12  360.

13  　　　　7.　　Gemini has further certified under oath that if Wesco had "disclosed the
14  true age, condition and prior storm damage at the docks" it would have effected whether and
15  how the policy would have been issued.

16  　　　　8.　　Alliant and Cramner failed to review either the Confirmation of Bind
17  Order or the policy declarations for the 2005 and 2006 policies. If they had, they would have
18  identified the change from blanket limit coverage, to individual limits and would have either
19  requested an endorsement to the policy, sought other coverage, or alerted Wesco to the change.

20  　　　　9.　　Alliant and Cramner fabricated the date of loss of December 14, 2004 in
21  the original Property Loss Notice submitted to Western Marine and Gemini.

22  　　　　10.　　The Wesco claim should have been denied completely or, at best, 25% of
23  the claim was payable. Under either factual scenario, Gemini unilaterally, and prior to providing
24  notice of the claim to Western Marine, paid in excess of any covered amount by tendering to
25  Wesco the individual policy limits totaling $650,000, without a reservation of rights and without
26  raising any of the applicable coverage defenses.

27  　　　　11.　　Gemini was aware of the applicable coverage defenses and the bases for
28  rescission of the policy prior to paying the Wesco claim. There is no evidence to support the

1   position that Gemini determined that these defenses were not viable prior to paying the claim.

2         12.    Gemini's decision to pay the Wesco claim was based on the

3   recommendation of MCS.  To the extent this is accurate, MCS improperly advised Gemini to pay

4   the Wesco claim in light of the numerous coverage defenses and bases for rescission it had

5   identified.

6         13.    Gemini did not timely assert the rescission and other coverage defenses to

7   the Wesco claim.

8         14.    Wesco argued that Gemini waived the rescission and coverage defenses in

9   the Underlying Litigation.

10        15.    Western Marine withdrew its defense of Gemini in the Underlying Action

11  when it determined that the Wesco claim was not covered and, therefore, the Underlying Action

12  was the result of Gemini's own negligence.  Western Marine had no continuing obligation to

13  provide a defense to Gemini under the PAA.

14        16.    Gemini's payment of the Wesco claim prejudiced Western Marine's

15  rights.

16      1.    **iv.**    **Alliant & Mr. Cranmer**None of the three policies issued by

17  Western Marine on the 2004, 2005 or 2006 applications included language expressly stating that

18  in the event of a property damage loss, payment for would be limited to the value of each

19  location listed in the policy (i.e., "per location limits").

20      2.    No one from Western Marine challenged, questioned or commented

21  negatively to Cranmer or anyone else at Alliant upon the insured's successive requests for the

22  renewal of the blanket coverage requested by the insured's retail broker on the 2004, 2005 and

23  2006 applications.

24      3.    Western Marine failed to advise its retail brokers (including Cranmer and

25  Alliant) that between the time of the 2004 Wesco application and the 2005 Wesco application,

26  Western Marine stopped issuing multi-location policies on a blanket basis.  Western Marine did

27  so without adding any clarifying or descriptive language in the policy terms and conditions

28  calling out the change and imposing a per-location limit.  The only subject change between the

1   2004 and 2005 policies issued by Western Marine was the omission of the letters "BLKT" on the

2   declarations page.

3          4.      Western Marine failed to further investigate when affirmatively told in

4   the applications by the retail broker, Mr. Cranmer, that there were adverse conditions existing on

5   the premises that might create an "unusual exposure" on each of the 2006, 2005 and 2006

6   applications.

7          5.      The 2002 premises inspection report commissioned by Western Marine

8   from Research Services, Inc. ("RSI") found the docks to be in "poor condition," and the 2005

9   RSI inspection report (also independently commissioned by Western Marine and completed prior

10  to the 2006 loss), found the docks to be in "good condition" and thus "acceptable for

11  underwriting" at that time.

12         6.      Western Marine and Scottsdale's claims against Alliant have been

13  released.

14         7.      Alliant and Cranmer dispute the relevance of Western Marine's statements

15  about Cranmer's review of the policies.  At all times, Alliant and Cranmer were available to

16  answer any questions or obtain any additional information requested by Western Marine or its

17  underwriters, or its investigators.  No such requests ever came from Western Marine or its

18  underwriters or investigators.

19         8.      The insured, Wesco, never sued Alliant or Cranmer nor did they ever

20  assign any rights to Western Marine or any other person or entity.

21         9.      As part of the settlement of the Underlying Action, Gemini and Alliant

22  entered into a mutual release and waiver of all claims known and unknown.  The general release

23  between Gemini and Alliant was given on behalf of Gemini as well as its "associates,

24  representatives, employees, [and] officers" as arising "in any way connected with or related to

25  any transaction, occurrence, event, act or omission which might or could have been alleged in the

26  [underlying State] Action or the Cross-complaint; [or] …[a]rise out of or are in any way

27  connected with the 2006 Policy."

28         10.     Western Marine is a releasor as defined in the agreement entered into by

1  Gemini.

2       11.    The alleged contract between Alliant and Western Marine was not a

3  broker agreement but rather a marketing agreement whereby Alliant was invited to submit

4  applications for insurance coverage on Western Marine's marina specialty program subject to a

5  prescribed commission schedule.  The agreement does not provide indemnification for past acts.

6  The marketing agreement was not signed until 2007, after the subject loss.

7       **v.    Marine Claims Services**

8       1.    MCS disputes any claim or suggestion, made by any party it had any duty

9  or obligation to (a) investigate, assess, and provide a recommendation regarding coverage for the

10  claim submitted by Wesco; (b) determine any coverage available to Wesco; (c) underwrite or

11  procure any of Wesco's policies; (d) make any decision concerning what should and should not

12  be paid to Wesco under any of its policies; or (e) that it acted outside the course and scope of its

13  agency with Gemini.

14  **4.    INDIVIDUAL LEGAL ISSUES**

15       **a.    Gemini's Position**

16            **i.    Western Marine breached its duties under the PAA**

17       Gemini alleges that Western Marine breached the PAA by failing to provide notice to

18  Wesco that the renewed policies did not contain blanket coverage.  Gemini maintains that the

19  Underlying Action was the direct result of this breach and, as such, Western Marina had a duty

20  to defend and indemnify Gemini in the Underlying Action.  Gemini maintains that Western

21  Marine breached Section 8.2 of the PAA by failing to reimburse Gemini for the $27,870.01 that

22  Gemini paid defending itself and the $950,000 portion of the settlement paid by Gemini.

23            **ii.    Western Marine had a duty to inquire further when no**

24                 **representations were made in response to the Loss History Questions**

25                 **on the application for the 2006-2007 Policy.**

26       The application for the 2006-2007 policy asked for a partial loss history.  Nothing was

27  entered in response to this part of the application, and neither box was checked.  Western Marine

28  had a duty to follow up on Wesco's failure to respond to the Loss History Questions on that

1   application.

2          iii.    **Wesco's failure to disclose the January 2001 loss did not provide**
3                  **Gemini with grounds for rescission.**

4          Wesco's failure to disclose the January 2001 loss in response to the Loss History

5   Questions on the application for the 2006-2007 Policy, did not provide Gemini with grounds for

6   rescinding that policy.  The application did not ask for any information about the January 2001

7   loss and, therefore, Gemini would not have been able to prove that concealment of such

8   information was a material concealment.  *See Farmers Auto. Inter-Insurance Exchange v.*

9   *Calkins*, 39 Cal.App.2d 390, 396 (1940) (an insurer's failure to inquire into a subject "indicates

10  an entire lack of interest in it"); *C.I.T. Corp. v. American Central Ins. Co.*, 18 Cal.App.2d 673,

11  678 (1937) ("Ordinarily, in the absence of fraud, a failure of insured to disclose a fact with

12  reference to which no questions are asked is not such a concealment as will avoid a policy."

13  (citation omitted)).

14         iv.     **Wesco's failure to disclose the January 2001 loss did not provide**
15                 **Gemini with grounds for rescission because the questions only asked**
16                 **for losses or occurrences that "may give rise to claims."**

17         The Loss History Questions on the application only asked for losses or occurrences "that

18  may give rise to claims . . . ."  Wesco had no duty to disclose the January 2001 loss in response

19  to the Loss History Questions on the application for the 2006-2007 Policy if Wesco believed that

20  it would not be making any claim for the January 2001 loss when it submitted the application.

21         v.      **Wesco's failure to disclose any loss that occurred prior to 2005 did not**
22                 **provide Gemini with grounds for rescission because Gemini would not**
23                 **have been able to prove that Wesco's failure to disclose was a**
24                 **material.**

25         Wesco's failure to disclose prior losses at the marinas was not material and, therefore,

26  would not have supported an action for rescission.  Cal. Ins. Code § 334; *Thompson v.*

27  *Occidental Life Ins. Co. of Calif.*, 9 Cal.3d 904, 916 (1973); *Mitchell v. United Nat'l Ins. Co.*,

28  127 Cal.App.4th 457, 474 (2005) (citations and internal quotation marks omitted).

1              **vi.**    **Gemini was required to pay Wesco at least $510,000 even if blanket**

2                              **coverage did not apply.**

3       The 2006-2007 Policy provided replacement cost coverage and therefore the condition of

4 the docks was irrelevant to the calculation of covered damages.  Replacement cost coverage

5 provides for new replacement of the damaged property despite the prior condition of the

6 damaged property. *Fire Ins. Exchange v. Superior Court*, 116 Cal.App.4th 446, 464 (2004).

7             **vii.**    **The Wesco loss was primarily caused by windstorm.**

8       Even if the loss of the docks was partly from the causes listed in the exclusions, i.e., wet

9 or dry rot, wear and tear, decay, deterioration, weathering, etc., Gemini could not have

10 disclaimed coverage based on the exclusions because the loss of the docks was primarily from

11 windstorm, a covered cause of loss.  Under California law, in first party cases claims are covered

12 by insurance if the covered peril is the "efficient proximate cause" of the loss, even if the

13 excluded cause may have contributed to the loss. *See Garvey v. State Farm*, 48 Cal.3d 395, 402-

14 403, 412-413 (1989).

15           **viii.**    **Western Marine has the burden of proving its affirmative defenses.**

16       In its Answer to Gemini's Complaint, Western Marine alleges various affirmative

17 defenses. [ECF 9 at 3-6]  Several of them encompass Western Marine's argument that Gemini

18 should have used various 2006-2007 Policy exclusions to disclaim or reduce coverage for

19 Wesco.  Western Marine has the burden of proof regarding all of its affirmative defenses. *See*

20 *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("it is incumbent on the defendant to plead and

21 prove" an affirmative defense).

22           **ix.**    **Scottsdale has the burden of proving its allegations.**

23       In its Fourth-Party Complaint, Scottsdale alleges that "the claims that were the subject of

24 the Wesco Acton were excluded, in whole or part, under the terms of the Gemini Policy and,

25 therefore, should have been denied from the outset." [ECF 56 at 9]  Scottsdale also alleges

26 "Gemini's own negligent, reckless, and/or intentional conduct, including, but not limited to, its

27 improper investigation, claims handling, and adjustment of the Wesco claim without a

28 reservation of rights, and its payment of a claim that was not covered under the Gemini Policy."

[ECF 56 at 10].  Scottsdale has the burden of proof regarding all of its allegations.  *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-58 (2005) ("plaintiffs bear the burden of persuasion regarding the essential aspects of their claims").

             **xi.**      **2006-2007 Policy Exclusions.**

             **A.**      **Exclusion for wet or dry rot.**

      The Order states: "Thus, at least part of the damage and loss reported in Wesco's claim fell under the rot exclusion." [ECF 142 at 26].  It is Gemini's position that the exception in the rot exclusion prevents the exclusion from barring or reducing coverage when the loss was concurrently caused by a windstorm.

             **B.**      **Exclusion for neglect.**

      The Order states: "Similarly, damage and losses resulting from Wesco's neglect in failing to properly repair the docks after the 2001 loss, to avoid the rot, also should be excluded." [ECF 142 at 26]  Gemini could not have used this exclusion to disclaim coverage for Wesco's claim, or otherwise reduce the amount Wesco was entitled to collect under the 2006-2007 Policy.

             **C.**      **Exclusion for wear and tear, and deterioration.**

      The Order states: "Lastly, damage and loss caused by normal wear and tear, as pointed out by MCS, and the additional deterioration resulting from the temporary plywood repairs should have been excluded as well." [ECF 142 at 26].  Gemini could not have used these exclusions to disclaim coverage for Wesco's claim, or otherwise reduce the amount Wesco was entitled to collect under the 2006-2007 policy.

             **b.**      **Western Marine's Position**

             **i.**      **Western Marine Did Not Breach its Duties Under the PAA**

      As a result of Gemini's negligent adjustment of the Wesco claim, Western Marine contends Gemini is estopped from seeking indemnification under the PAA.

      To the extent it has not been ruled on by the Court previously, Western Marine disputes that it breached any portions of the PAA.

      Furthermore, under the PAA, Western Marine contends it is not responsible for Gemini's own negligence in failing to properly investigate, adjust, or react to the claim.

1

        **ii.**    **Alliant and Cramner have breached the Broker Agreement**

2

      Western Marine also contends Alliant and David Cranmer breached Paragraphs 16 and

3

17 of the Broker Agreement by failing to defend and indemnify Western Marine.

4

        **iii.**    **Gemini has waived and is estopped from raising arguments regarding**

5

                **the availability of rescission and the applicability of the coverage**

6

                **defenses to the Underlying Action.**

7

      Western Marine maintains that Gemini has waived and is estopped from raising any

8

arguments regarding the availability of rescission and the applicability of certain policy

9

exclusions to the Wesco claim as a result of positions it previously took in the Underlying

10

Action, its certified statements in the Underlying Action, and the prior findings of the Court in

11

this action. *Pegram v. Herdrich* (2000) 530 U.S. 211, 227.

12

        **iv.**    **Misrepresentations in the Applications and Rescission**

13

      To the extent it has not already been conclusively determined by the Court, Western

14

Marine maintains that Gemini increased the risk under the PAA by failing to timely seek

15

rescission of the policy issued to Wesco.  Gemini still had the right to rescind the policies when

16

later information revealed prior damage and losses up until the commencement of the

17

Underlying Action.  *Cole v. Calaway*, 140 Cal. App. 2d 340, 347-48 (1956); citing to Cal. Civ.

18

Code § 1691 and Cal. Ins. Code § 650.

19

        **ii.**    **Claim Exclusions**

20

      To the extent it has not already been conclusively determined by the Court, Western

21

Marine maintains that Gemini increased the risk under the PAA by failing to timely assert

22

applicable policy exclusions.  *See N. American Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.,*

23

137 Cal. App. 4th 627, 642 (2006).  Any provision that takes away or limits coverage reasonably

24

expected by the insured must be "conspicuous, plain and clear" to be enforceable.  *Id.* (citations

25

and internal quotations omitted).

26

        **iii.**    **Indemnity Claims**

27

      "In order to attain . . . a system . . . in which liability for an indivisible injury caused by

28

concurrent tortfeasors will be borne by each individual tortfeasor 'in direct proportion to [his]

respective fault,' we conclude that the current equitable indemnity rule should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." *American Motorcycle Assn. v. Superior Court*, 20 Cal.3d 578 (1978) (internal citation omitted).  "[C]omparative equitable indemnity includes the entire range of possible apportionments, from no right to any indemnity to a right of complete indemnity.  Total indemnification is just one end of the spectrum of comparative equitable indemnification." *Far West Financial Corp. v. D & S Co., Inc.*, 46 Cal.3d 796, 808 (1988) (internal quotation marks and citation omitted).

"The right to implied contractual indemnity is predicated upon the indemnitor's breach of contract, 'the rationale . . . being that a contract under which the indemnitor undertook to do work or perform services necessarily implied an obligation to do the work involved in a proper manner and to discharge foreseeable damages resulting from improper performance absent any participation by the indemnitee in the wrongful act precluding recovery.' . . . 'An action for implied contractual indemnity is not a claim for contribution from a joint tortfeasor; it is not founded upon a tort or upon any duty which the indemnitor owes to the injured third party.  It is grounded upon the indemnitor's breach of duty *owing to the indemnitee* to properly perform its contractual duties.' " *West v. Superior Court*, 27 Cal.App.4th 1625, 1633 (1994) (internal citations omitted, italics in original).

An insurance agent has "the obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." *Jones v. Grewe*, 189 Cal. App. 3d 950, 954 (1987).  Thus, "an insurance agent may also assume a great duty toward his insured by misrepresenting the policy's terms or extent of coverage." *Paper Savers, Inc. v. Nacsa*, 51 Cal. App. 4th 1090, 1096-1097.  "It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and *he cannot thereafter complain that he did not read it or know its terms.*" *Hackethal v. National Casualty Co.* 189 Cal. App. 3d 1102, 1112 (1987) (emphasis in original, internal quote and citations omitted).Civil Code section 1714(a) provides in part: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care

1   or skill in the management of his or her property or person, except so far as the latter has,

2   willfully or by want of ordinary care, brought the injury upon himself or herself." Alliant and

3   Mr. Cranmer owed a duty of care to Western Marine by virtue of their long-term custom and

4   practice, behavior, and contractual relationship.

5       c.   **Scottsdale's Position**

6       1.   Gemini is not a party entitled to indemnification under the terms of the PAA.

7   Taracorp, Inc. v. NL Indus., Inc., 73 F.3d 738 (7th Cir. 1996); Sorrentino v. Waco Scaffolding

8   & Shoring Co., 44 Ill. App. 3d 1055, 1058 (1976); Blackshare v. Banfield, 367 Ill. App. 3d

9   1077, 1079 (2006).

10      2.   Gemini bears the initial burden of demonstrating it is entitled to indemnification

11  under the PAA.

12      3.   Gemini is not entitled to indemnification under the PAA for its own negligence.

13  Blackshare v. Banfield, 367 Ill App. 3d 1077, 1079 (2006).

14      4.   Gemini's conduct in adjusting the claim materially increased the risk, and prejudiced

15  the rights, of Western Marine and, therefore, discharged Western Marine from any

16  indemnification obligation under the PAA.  Rochelle Bail Agency, Inc. v. Maryland Nat. Ins.

17  Co., 484 F.2d 877, 878 (7th Cir.1973).

18      5.   Wesco's failure to disclose prior damage and losses at the Marinas constituted valid

19  bases to seek rescission of the policy.  These misrepresentations and omissions were material as

20  a matter of law and Gemini is estopped from arguing otherwise, having asserted, under oath,

21  that the misrepresentation was material in the Underlying Action.  See LA Sound USA, Inc. v.

22  St. Paul Fire & Marine Ins. Co., 156 Cal.App.4th 1259, 1266-1267 (Cal. App. 2007); Clayburgh

23  v. Agricultural Ins. Co. of Watertown, N.Y., 155 Cal. 708, 711 (1909).

24      6.   Gemini waived its rescission rights by failing to timely raise them.  Cole v. Calaway,

25  140 Cal. App. 2d 340, 347-48 (1956); Cal. Ins. Code § 650.

26      7.   The Gemini Policy did not provide coverage for damages occurring prior to the 2006

27  policy period.

28      8.   The Gemini Policy further specifically excluded coverage for loss or damage caused

by, among other things, "fungi", "wet or dry rot", neglect of the insured to use all reasonable

means to save and preserve property", "wear and tear", "decay, deterioration, weathering [...]."

The policy's exclusions precluded coverage for the Wesco claim because the excluded perils

were the efficient proximate cause of the Wesco claim. See Cal.Ins.Code § 532; Julian v.

Hartford Und. Ins. Co., 35 Cal.4th 747, 754 (2005); Garvey v. State Farm Fire & Cas. Co., 257

Cal. Rptr. 292, 296, 770 (1989).

9.   Alliant had a non-delegable duty to review the Confirmation of Bind Order and the

Policy to ensure that the policy issued met the requirements of its client, Wesco.  Alliant failed

to fulfill this obligation and, as such, did not notify its client of the change from blanket

coverage to individual limits.  See generally Greenfield v. Insurance Inc., 19 Cal.App.3d 803,

810 (Cal.App. 1971).

10. Alliant had an affirmative duty to disclose the prior storm damage and a duty to

disclose that the docks suffered from significant long-term decay, dry rot, fungus, wear and tear,

and other structural problems pursuant to the policy as well as Cal. Ins. Code §§ 330 - 335, 338,

350-56, 358-360.  Alliant failed to fulfill this obligation.  An insurance broker may be held

liable for fraudulent or negligent misrepresentations in an insured's application for insurance,

including failure to disclose prior losses.  See Century Sur. Co. v. Crosby Ins., Inc., 124

Cal.App.4th 116, 124 (Cal.App. 4 Dist., 2004).

11. MCS, as Gemini's third-party claims administrator, had a duty to properly

investigate and adjust the Wesco claim.  According to Gemini, MCS advised it to pay the

Wesco claim up to the individual limits of liability, notwithstanding having identified numerous

coverage defenses that precluded the claim.  To the extent MCS made such a recommendation,

it breached its duty and, as a result, Scottsdale suffered damages.

12. As a result of its payment of the Wesco claim, Scottsdale has a right in equitable

subrogation against Gemini, Alliant, and MCS, who are primarily responsible, in whole or part,

for these damages.  Fireman's Fund Ins. Co. v. Md. Cas. Co., 77 Cal. Rptr. 2d 296, 303 (Ct.

App. 1998)("The essential elements of an insurer's cause of action for equitable subrogation are

as follows: (a) the insured suffered a loss for which the defendant is liable, either as the

1  wrongdoer whose act or omission caused the loss or because the defendant is legally responsible

2  to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the

3  insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part

4  for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim

5  of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing,

6  assignable cause of action against the defendant which the insured could have asserted for its

7  own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered

8  damages caused by the act or omission upon which the liability of the defendant depends; (g)

9  justice requires that the loss be entirely shifted from the insurer to the defendant, whose

10  equitable position is inferior to that of the insurer; and (h) the insurer's damages are in a

11  liquidated sum, generally the amount paid to the insured.").

12       13.  As a result of its payment of the Wesco claim, Scottsdale has a right under implied

13  equitable and implied contractual indemnity against Gemini.  Prince v. Pac. Gas & Elec. Co., 90

14  Cal. Rptr. 3d 732 (2009).

15       14.  As a result of its payment of the Wesco claim, Scottsdale has a right under implied

16  equitable indemnity against MCS and Alliant.  GEM Developers v. Hallcraft Homes of San

17  Diego, Inc., 261 Cal. Rptr. 626, 632 (Ct. App. 1989).

18       15. As a result of its payment of the Wesco claim and the defense costs in the

19  Underlying Action, Gemini has been unjustly enriched to the detriment of Scottsdale.  See

20  Peterson v. Cellco P'ship, 80 Cal. Rptr. 3d 316, 323 (Ct. App. 2008).

21       **c.    Alliant's & Mr. Cranmer's Position**

22       1.    As the retail broker, Alliant owes no legal duty to the wholesale broker, Western

23  Marine or its subrogee, Scottsdale.  There is a bright line drawn by the law between an insurance

24  agent and an insurance broker.  An insurance *agent* is one "authorized, by and on behalf of an

25  insurer, to transact all classes of insurance other than life, disability, or health insurance, on

26  behalf of an admitted insurance company." (Calif. Ins. Code §31.)  An insurance *broker*, on the

27  other hand, is a person who, for compensation "and on behalf of another person, transacts

28  insurance other than life, disability, or health with, but not on behalf of, an insurer." (Ins. Code

1  §33.)

2       2.      In placing coverage with a non-admitted insurer such as Gemini, the retail broker
3  may "not transact any insurance for a home state insured...except by and through a surplus lines
4  broker." (Ins. Code § 1761.) As stated above, Western Marine was the surplus lines broker for
5  Gemini.

6       3.      Alliant was not in privity with Gemini or Western Marine for purposes of
7  obtaining coverage for Wesco Sales, and thus owed no contractual duty to perform any
8  underwriting, policy writing, claims adjusting or coverage determinations regarding Gemini's
9  2006 renewal policy.

10      4.      Under the common law of California, an insurance broker is only obligated to
11 obtain the type of insurance requested by an insured. "The duty of an insurance broker, by and
12 large, is to use reasonable care, diligence, and judgment in procuring the insurance requested by
13 its client." (*Kurtz, Richards, Wilson & Co. v. Insurance Communicators Marketing Corp.*, (1993)
14 12 Cal.App.3th 1249, 1257. See also, *Greenfield v. Insurance Incorporated* (1971) 19
15 Cal.App.3d 803, 810; *Westrick v. State Farm Insurance* (1982) 137 Cal.App.3d 685); *Jones v.*
16 *Grewe,* (1987) 189 Cal.App.3d 950; *Nowlon v. Koram Ins. Center, Inc.,* (1991) 1 Cal.App.4th
17 1437; *Paper Savers v. Nacsa* (1996) 51 Cal.App.4th 1090; and, *San Diego Assemblers v. Work*
18 *Comp For Less Insurance Services, Inc.* (2013) 220 Cal.App.4th 1363. No statute or case
19 extends the retail broker's duty of professional care to the insurer's surplus lines broker.

20      5.      The case of *Century Surety Co. v. Crosby Ins.* (2004) 124 Cal.App.4th 116, 124
21 does not apply to this case because there was no fraud by Alliant.

22      6.      Alliant met all of its obligations to Western Marine under the law when it
23 presented the renewal to the surplus lines broker (wholesaler) with express indications of
24 "unusual risk." (See, Cal. Insurance Code section 1763.2(b) requiring the "originating licensee"
25 (i.e., the retail broker) to use due care and diligence in the collection, preparation, and
26 transmission of the information to the surplus line broker.)

27      7.      There is no statutory or case law standing for the proposition that the retail broker
28 owes the wholesale broker an actionable duty of care to tell the carrier or the carrier's agent

SC37-0000013
12184855.1

Western Marine how to properly investigate and underwrite a risk that has been accurately described by the retail broker as unusual, nor does the retail broker owe any duty to tell the carrier or its agent how to correctly write its policies, nor does the retail broker have any duty to call out to the carrier or its surplus lines agent any ambiguities in the wording or coding in a renewal policy, least of all when a requested clarification could stand to limit the coverage afforded to the retail insurance client as something less than the blanket coverage expressly requested by Alliant on behalf of the insured.

8. As Gemini's representative, Western Marine does not have standing to sue Alliant and Cranmer because Gemini released those claims in settlement of the underlying State case.

9. The Court has specifically adjudicated that while working for GEMINI as an independent contractor, WESTERN MARINE was nonetheless GEMINI's agent: "'Independent contractor' and 'agent' are not mutually exclusive legal categories. *APSB Bancorp v. Thornton Grant,* 26 Cal.App.4th 926, 930 (1994).

10. Alliant and Cranmer assert that if they owed Western Marine (and by implication Scottsdale) any duty (such duty being disputed), was waived by Western Marine's independent evaluation of the risk by RSI.

11. Any and all rights of Western Marine and Scottsdale against Alliant have been expressly waived by the accord and satisfaction set forth above. As Western Marine's subrogee, Scottsdale steps into Western Marine's shoes and holds no independent right to sue Alliant beyond those claims already released by the subrogor's principal, Gemini.

12. Western Marine and Scottsdale have waived any claimed rights against Alliant and Cranmer by failing to timely sue within the time limits of the applicable statute of limitations, California Code of Civil Procedure section 339.1. Here, if there existed any duty of the retail broker to the wholesale broker (said duty being denied), it would be in the nature of a duty of professional care and thus subject to the two-year limitation.

13.     Western Marine and Scottsdale have waived any claimed rights against Alliant and Cranmer by undue delay in the assertion of their equitable claims (laches).

14.     Western Marine (and by operation of law, Scottsdale) have waived any affirmative claims against Alliant or Mr. Cranmer by reason of Western Marine's failure to intervene and file a mandatory cross-complaint against Alliant and Cranmer in the Underlying Action at the time it moved to intervene to protect its interests *vis a vis* RSI.  (See, California Code of Civil Procedure, section 426.30(a).

### e.     Marine Claims Services' Position

1.     MCS intends to submit relevant points of law in its trial brief.  For purposes of this Statement, MCS submits that the precepts of ordinary professional negligence law will sufficiently address Scottsdale's claim against MCS.

2.     MCS contends that it did not violate any of the terms of the CAA and is unaware of any party making such contention.  MCS was not a party to the PAA or any of Wesco's insurance policies.

## 5.     RELIEF SOUGHT & MEASURE OF DAMAGES

### a.     Gemini

Gemini is seeking damages for breach of contract.  Gemini is not seeking rescission, restitution, or specific performance.

Gemini is seeking monetary damage from Western Marine in the amount of 1) $950,000 for the contribution that Gemini made to settle the underlying action entitled *Wesco Sales Corporation v. Gemini Insurance Company, et al.*, case no. 56-2009-00336822-CU-IC-VTA, Superior Court of California, County of Ventura, 2) $27,870.01 for the attorney fees that Gemini had to pay for its defense in the underlying action, and 3) prejudgment interest a calculation of which will be submitted through post-trial motion.

### b.     Western Marine

Western Marine is seeking damages for breach of contract under the PAA and Broker

1   Agreement.  Western Marine is also seeking damages under an indemnity claim.

2        Western Marine is seeking monetary damages from Gemini and Alliant and Mr. Cranmer

3   in the amount of its $950,000 for Western Marine's contribution to settle the underlying action,

4   as well as prejudgment interest on that amount (which will be calculated at the time of trial).

5   Western Marine is also seeking attorneys' fees and costs for the defense of this action against

6   Alliant and Cranmer, a precise calculation of which will be made at the time of trial.

7        **c.    Scottsdale**

8        Scottsdale is seeking monetary damages from Gemini in the amount of (i) $950,000 for

9   the contribution that Scottsdale made to settle the Underlying Action; (ii) $111,651.96 for the

10  attorney fees and expenses that Scottsdale incurred in defending Gemini in the Underlying

11  Action; and (iii) Prejudgment interest at the rate of 10 percent per annum on the foregoing

12  amounts, which amount shall be calculated at the time of judgment in this action and submitted

13  by way of post-trial motion.   Scottsdale is also seeking monetary damages from Alliant and

14  MCS for their proportionate share of liability for the foregoing costs and expenses, along with

15  prejudgment interest.

16       **d.    Alliant & Mr. Cranmer**

17       None.  Judgment for Alliant and Cranmer and against Western Marine and Scottsdale,

18  plus reciprocal attorney's fees and costs.

19       **e.    Marine Claims Services**

20       MCS is not seeking affirmative relief other than costs recoverable by law.

21

22  **6.    LIST OF PRIOR NON-DISCOVERY MOTION**

        See list attached hereto as Exhibit A.

23

24  **7.    DISPUTED EVIDENTIARY ISSUES**

        To the extent that Gemini continues to pursue factual and legal arguments that contradict

25  the Court's prior rulings in this matter, Scottsdale intends to file a motion *in limine* to preclude

26  such evidence and argument.  Gemini's position is that there are factual and legal errors in the

27  Order.

28       The Court's Order has already determined all of the material issues as between Gemini

and Western Marine and, therefore, Scottsdale and Western Marine maintain that a motion for judgment is proper and would dispose of this action, in whole or part.  Gemini's position is that there are factual and legal errors in the Order.

**8.      JOINT AGREED-UPON WITNESS LIST (all witnesses are listed only once and any witness listed by any party may be called by any other party at the time of trial)**

     a. Mathew Hafey: Testimony about the litigation in *Wesco Sales Corporation v. Gemini Insurance Company, et al*., case no. 56-2009-00336822-CU-IC-VTA, Superior Court of California, County of Ventura ("Wesco Action").

     b. Dennis Keithley: Testimony about the Claims Administration Agreement ("CAA"), and adjustment of the claim submitted by Wesco Sales Corporation.

     c. Lelora Peterson: Testimony about the underwriting and issuance of the Gemini policies to Wesco, and adjustment of the claim submitted by Wesco.

     d. James Dawson: Testimony about the underwriting and issuance of the Gemini policies to Wesco, and adjustment of the claim submitted by Wesco.

     e. Joseph Pojman: Testimony about the Program Administrator Agreement ("PAA"), the CAA, adjustment of the claim submitted by Wesco, the litigation in the Wesco Action, and Gemini's attorney fees in the Wesco Action.

     f. Joe Cecchini: Testimony about the PAA, adjustment of the claim submitted by Wesco, and the litigation in the Wesco Action.

     g. Sheila Eskue: Testimony about the underwriting and issuance of the Gemini policies to Wesco, and adjustment of the claim submitted by Wesco.

     h. Thomas Cangemi: Testimony about the underwriting and issuance of the Gemini policies to Wesco, and adjustment of the claim submitted by Wesco.

     i. David Cranmer: Testimony about the application for, and issuance of, the Gemini policies to Wesco, and adjustment of the claim submitted by Wesco.

     j. Howard Wollitz, Esq.: Testimony about the adjustment of the underlying Wesco claim, his firm's coverage analysis, and the decision to ultimately pay

1    the Wesco claim.

2        k.  Frank Butler: Prior losses at the marinas, the condition of the marinas prior to

3            2006, and his statements during the investigation of the claim.

4        l.  Theodore Brown: His adjustment and reports regarding the marinas and his

5            determination that at least 75% of the damage was not covered under the

6            policy.

7        m.  The Persons Most Knowledgeable ("PMK") for Research Specialists, Inc.

8    The parties reserve the right to call unlisted rebuttal and impeachment witnesses.

9                    **N. JOINT AGREED-UPON EXHIBIT LIST**

10   **See attached Exhibit B.**

11       In addition, the parties reserve the right to seek admission of unlisted impeachment and

12   rebuttal exhibits.

13   **9.    SETTLEMENT**

14       The parties believe that further settlement negotiations only would be helpful if

15   conducted by Judge Kimberly J. Mueller, as previously stipulated. The parties participated in

16   two voluntary mediation sessions in San Francisco with the Hon. Bonnie Sabraw (retired), and a

17   Mandatory Settlement Conference held September 22, 2016 before Magistrate Judge Edmund F.

18   Brennan. All settlement discussions to date have been unsuccessful.

19

20                           HAIGHT BROWN & BONESTEEL LLP

21
                              By: /s/ Valerie A. Moore
22                            Valerie A. Moore (Bar No. 107359)

23                           CARROLL McNULTY KULL
24

25                            By: /s/ Gary S. Kull
                              Attorneys for Intervenor/Fourth-Party Plaintiff
26                            SCOTTSDALE INDEMNITY COMPANY

27

28

SC37-0000013
12184855.1                        26                    2:10-CV-03172-KJM-DB
                                                        JOINT PRETRIAL STATEMENT

1        CHARLSTON, REVICH & WOLLITZ LLP

2
         By: /s/ Howard N. Wollitz
3        Plaintiff, Fourth-Party Defendant
         and Cross-Complainant GEMINI INSURANCE
4        COMPANY

5

6        KRONENBERG LAW, APC

7
         By: /s/ Stephen Harold Fleischer-Ihn (as authorized
8        on January , 2017)
         Attorneys for Defendant/Third-Party Plaintiff
9        WESTERN MARINE INSURANCE SERVICES
         CORPORATION
10

11
         LAW OFFICE OF ANTON C. GERSCHLER
12

13       By: /s/ Anton Carl Gerschler (as authorized on
         January , 2017)
14       Attorneys for Third-Party Defendants ALLIANT
         INSURANCE SERVICES, INC. and DAVID
15       CRANMER; and Fourth-Party Defendant
         ALLIANT INSURANCE SERVICES, INC.
16

17
         MANNING & KASS, ELLROD, RAMIREZ,
18       TRESTER LLP

19
         By: /s/ David Gorney (as authorized on January ,
20       2017)
         Attorneys for Fourth-Party Defendant MARINE
21       CLAIMS SERVICES, INC.

22

23

24

25

26

27

28

# EXHIBIT A

EXHIBIT A

GEMINI INSURANCE COMPANY, WESTERN MARINE INSURANCE SERVICES

CORPORATION, ALLIANT INSURANCE SERVICES, INC., DAVID CRANMER, MARINE

CLAIMS SERVICES, INC., and SCOTTSDALE INDEMNITY COMPANY jointly submit this

list of non-discovery motions, with resolutions, pursuant to the Status (Pretrial Scheduling) Order

dated May 8, 2014. [ECF 86]

**MOTION TO DISMISS BY ALLIANT**

ECF 15 (5-6-2011): Motion to Dismiss by Alliant.

ECF 17 (5-9-2011): Minute Order stating that the Motion to Dismiss is defective and

should be re-noticed.

**MOTION TO DISMISS BY RESEARCH SPECIALISTS**

ECF 18 (5-9-2011): Motion to dismiss by Research Specialists.

ECF 43 (7-18-2012): Order granting Research Specialists Motion to Dismiss.

**MOTION TO INTERVENE BY SCOTTSDALE**

ECF 24 (6-15-2011): Motion to Intervene by Scottsdale.

ECF 27 (6-16-2011): Minute Order stating that the hearing for the Motion to Intervene is

vacated, and the motion should be re-noticed.

ECF 28 (6-16-2011): Motion to Intervene by Scottsdale.

ECF 53 (3-1-2013): Order granting Scottsdale's Motion to Intervene.

**MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER BY WESTERN**

**MARINE**

ECF 54: (3-18-2013): Motion to for Leave to File First Amended Answer by Western

Marine.

ECF 65 (8-6-2013): Order denying Western Marine's Motion for Leave to File First

Amended Answer.

**MOTION TO CONTINUE TRIAL DATE BY GEMINI**

ECF 87: (12-12-2014): Motion to Continue Trial Date and All Related Dates by Gemini.

ECF 91 (12-22-2014): Notice of Withdrawal of Motion to Continue Trial Date and All Related Dates by Gemini.

**MOTION FOR SUMMARY JUDGMENT BY GEMINI**

ECF 95 (8-25-2015): Motion for Summary Judgment, or alternatively, for Partial Summary Judgment by Gemini.

ECF 142 (6-22-2016): Order denying in part and granting in part, Gemini's Summary Judgment Motion.

**EXHIBIT B**

| Trial Exhibit Number | Description | Cross-Reference |
|---|---|---|
| 1. | Program Administrator Agreement | GEM0007-0039; GEM SJ Ex. 1 |
| 2. | Claims Administration Agreement | GEM503-521; GEM SJ Ex. 2 |
| 3. | Sheila Eskue Deposition Excerpts | GEM SJ Ex. 3 |
| 4. | Insurance Application (May 29, 2004) | WM00124-148; GEM SJ Ex. 4 |
| 5. | David Cranmer Deposition Excerpts | GEM SJ Ex. 5 |
| 6. | Lelora Peterson Deposition Excerpts | GEM SJ Ex. 6 |
| 7. | Gemini Insurance Policy (August 6, 2004 – August 6, 2005) | WM00171-00303 GEM SJ Ex. 7 |
| 8. | James Dawson Deposition Excerpts | GEM SJ Ex. 8 |
| 9. | Insurance Application (June 13, 2005) | WM00304-333 GEM SJ Ex. 9 |
| 10. | Gemini Insurance Policy (August 6, 2005 – August 6, 2006) | GEM0184-281 GEM SJ Ex. 10 |
| 11. | Thomas Cangemi Deposition Excerpts | GEM SJ Ex. 11 |
| 12. | Insurance Application (May 16, 2006) | WM0450-469 GEM SJ Ex. 12 |
| 13. | Gemini Insurance Policy (August 6, 2006 – August 6, 2007) | WM0486-0681 GEM SJ Ex. 40 |
| 14. | Email to Driver/Alliant With Renewal Policy Change Notice | WM1060-1066 GEM SJ Ex. 14 |
| 15. | Letter to Wesco With Renewal Policy Change Notice | WM1031-1036 GEM SJ Ex. 15 |
| 16. | Westmar's Initial Disclosures | GEM SJ Ex. 16 |
| 17. | 7/12/07 Email from Eskue to Keithley | MCS CL 851 GEM SJ Ex. 17 |
| 18. | Letter to David Cranmer from Thomas Cangemi | WM1182-1183 GEM SJ Ex. 18 |
| 19. | 8/28/2007 Email from Lelora Petersen to David Cranmer attaching Cangemi Letter | WM1181-1183 GEM SJ Ex. 19 |
| 20. | 9/24/2010 Wesco Settlement and Release Agreement | GEM SJ Ex. 20 |
| 21. | Wesco's Complaint in *Wesco v. Gemini* | GEM SJ Ex. 21 |
| 22. | 5/7/2009 Letter from Steven A. Kronenberg to Howard Wollitz | GEM SJ Ex. 22 |
| 23. | Gemini's Cross-Complaint in *Wesco v. Gemini* | GEM SJ Ex. 23 |
| 24. | Gemini's First Amended Cross-Complaint in *Wesco v. Gemini* | GEM SJ Ex. 24 |
| 25. | Gemini's Second Amended Cross-Complaint in *Wesco v. Gemini* | GEM SJ Ex. 25 |
| 26. | Gemini's Third Amended Cross-Complaint in *Wesco v.* | GEM SJ Ex. 26 |

| Trial Exhibit Number | Description | Cross-Reference |
|---|---|---|
| | *Gemini* | |
| 27. | Gemini's Fourth Amended Cross-Complaint in *Wesco v. Gemini* | GEM SJ Ex. 27 |
| 28. | 8/2/2010 Letter from Gary S. Kull to Matthew J. Hafey | GEM502 GEM SJ Ex. 28 |
| 29. | 8/19/2010 Letter from Michael C. Murphy to Howard Wollitz | GEM SJ Ex. 29 |
| 30. | W.R. Berkley Corporation Ledger Balance | GEM SJ Ex. 30 |
| 31. | BUP Remit to Vendor History Report | GEM SJ Ex. 31 |
| 32. | Wesco's Answer to Gemini's Second Amended Cross-Complaint in *Wesco v. Gemini* | GEM SJ Ex. 32 |
| 33. | 11/01/02 Multi Peril Report from Index Research Services | MCS CL 397-401; 469-471 GEM SJ Ex. 33 |
| 34. | 08/24/2005 Marine Dealers Report from Research Specialists for 3821 Victoria Ave. | RSI 024-29, 31-50; GEM SJ Ex. 34 (possible duplicate of 38) |
| 35. | Melvin Tobias Deposition Excerpts | GEM SJ Ex. 35 |
| 36. | Westmar's Response to Gemini's Interrogatories | GEM SJ Ex. 36 |
| 37. | Wesco's First Amended Complaint in *Wesco v. Gemini* | GEM SJ Ex. 37 |
| 38. | Marine Dealers Report by RSI for 3821 Victoria Ave. | WM 0910-928 GEM SJ Ex. 38 |
| 39. | 1/24/07 Letter from MCS to Howard Wollitz | MCS CL 1054-1057 GEM SJ Ex. 39 |
| 40. | Transcript of the Deposition of Joseph Pojman, taken September 9, 2015. | SCT SJ Ex. 1 |
| 41. | E-mail chain between Howard Wollitz and Westmar dated 11/22/2008 through 11/26/2008. | GEM 1220-1223 SCT SJ Ex. 2 |
| 42. | 12/7/2006 Property Loss Notice | MCS CL 357 SCT SJ Ex. 3 |
| 43. | 12/13/2006 Fax from MCS to Langhammer & Associates Assigning Claim | MCS CL 375-376 SCT SJ Ex. 4 |
| 44. | 12/18/2006 Recorded statement of Frank W. Butler | SCT SJ Ex. 5 |
| 45. | 12/20/2006 Property Loss Notice | MCS CL 389 SCT SJ Ex. 6 |
| 46. | 1/5/07 First Report of Langhammer & Associates | MCS CL 519-523 SCT SJ Ex. 7 |
| 47. | 1/26/07 Underwriter's Risk Notice prepared by MCS | MCS CL 1051 SCT SJ Ex. 8 |
| 48. | 5/12/08 Large Loss Report prepared by MCS | MCS CL 770-775 SCT SJ Ex. 9 |

| Trial Exhibit Number | Description | Cross-Reference |
|---|---|---|
| 49. | 1/22/07 e-mail from Joe Pojman to MCS | GEM 44<br>SCT SJ Ex. 10 |
| 50. | 1/24/07 letter from MCS to Howard Wollitz | GEM 21-24<br>SCT SJ Ex. 11 |
| 51. | 2/15/07 e-mail from Howard Wollitz to Dennis Keithley | GEM 10-12<br>SCT SJ Ex. 12 |
| 52. | 9/12/07 letter from Howard Wollitz to Michael Murphy, Esq. | MCS CL 800-802<br>SCT SJ Ex. 13 |
| 53. | 3/5/08 e-mail from Dennis Keithley to Howard Wollitz | GEM 509<br>SCT SJ Ex. 14 |
| 54. | 3/6/08 MCS Claim Note | MCSI 031<br>SCT SJ Ex. 15 |
| 55. | 3/7/08 letter from Howard Wollitz to Michael C.  Murphy, Esq., Fwd Checks | MCS CL 782-785<br>SCT SJ Ex. 16 |
| 56. | 12/02/08 letter from Howard Wollitz to Westmar | GEM 1185-1187<br>SCT SJ Ex. 17 |
| 57. | Gemini's Form Interrogatory Responses in *Wesco v. Gemini* | SCT SJ Ex. 18 |
| 58. | Wesco's Responses to Form Interrogatories in *Wesco v. Gemini* | SCT SJ Ex. 19 |
| 59. | Deposition of David Cranmer, taken April 10, 2015. | SCT SJ Ex. 20 |
| 60. | Gemini Opposition to Application for Right to Attach in *Wesco v. Gemini* (including declarations included therewith) | |
| 61. | 2006 Bind Order | WM482-488 |
| 62. | MCS Claim Notes | MCS CL 406-409 |
| 63. | 3/6/08 Email from Wollitz to MCS Fwd Pojman Email of 9/12/07 | GEM 507; GEM 523 |
| 64. | 3/6/08 Email from Wollitz to MCS | GEM 505 |
| 65. | 9/11/07 Email from Wollitz to Pojman | GEM549 |
| 66. | Department of Beaches Report | GEM595-633 |
| 67. | 1/19/07 Lttr from Butler to MCS Re Loss | MCS CL 1052-53 |
| 68. | Agreement with Broker | WM 92-95 |
| 69. | 8/25/2009 Minute Order and Transcript of Hearing (if available) on Mtn to Attach in Wesco v. Gemini | |
| 70. | 8/25/09 Email from M. Hafey to J. Pojman Re Outcome of Hearing | |
| 71. | 08/24/2005 Marine Dealers Report from Research Specialists for 3615 Victoria Ave. | WM00929-939, 943-945 |
| 72. | Alliant/Gemini settlement agreement | |
| 73. | Western Marine's ex parte application to intervene in *Wesco v. Gemini* | |
| 74. | Western Marine's proposed complaint in intervention in *Wesco v. Gemini* | |

1

**PROOF OF SERVICE**

2   **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3   *GEMINI INSURANCE COMPANY v. WESTERN MARINE INSURANCE SERVICES CORP.*
Case No. 2:10-CV-03172-KJM-DAD

4

5          At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 555 South Flower Street, Forty-Fifth Floor, Los Angeles, CA 90071.

6

7          On January 30, 2017, I served true copies of the following document(s) described as **JOINT PRETRIAL STATEMENT** on the interested parties in this action as follows:

8                    **SEE ATTACHED SERVICE LIST**

9          **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the

10   case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by

11   other means permitted by the court rules.

12          I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of

13   the bar of this Court at whose direction the service was made.

14          Executed on January 30, 2017, at Los Angeles, California.

15

16   _____

17                    Keisha Stevens

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**
**GEMINI INSURANCE COMPANY v. WESTERN MARINE INSURANCE SERVICES CORP.**
**Case No. 2:10-CV-03172-KJM-DAD**

Howard N. Wollitz, Esq.
Allan J. Favish, Esq.
Charleston, Revich & Wollitz, LLP
1925 Century Park East, Suite 1250
Los Angeles, California 90067

Phone: (310) 551-7006
Fax: (310) 203-9321
email: hwollitz@crwllp.com
          afavish@crwllp.com
[*Attorneys for Plaintiff/Fourth-Party Defendant, Gemini Insurance Co.*]

Anton Carl Gerschler, Esq.
North County Law Firm
914-A North Coast Highway 101
Encinitas, California 92024

Phone: (760) 633-4060
Fax: (760) 633-4066
email: anton@northcountylawfirm.com
[*Attorneys for Third-Party Defendant, Alliant Insurance Services, Inc.*]

Gary S. Kull, Esq.
Nicholas A. Vytell, Esq.
CAROLL McNULTY KULL LLC
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, NJ 07920
Telephone: 908.848.6300
Facsimile: 908.848.6310
e-mail: gkull@cmk.com
          nvytell@cmk.com

William Kronenberg, Esq.
Stephen Fleischer-Ihn, Esq.
Kronenberg Law, P.C.
1999 Harrison Street, Suite 1450
Oakland, California 94612-4729

Phone: (510) 254-6767
Fax: (510) 788-4092
email: wkronenberg@krolaw.com
          syuen@krolaw.com
[*Attorneys for Defendant/Third-Party Plaintiff, Western Marine Insurance Services Corp.*]

David Gorney, Esq.
Manning & Kass Ellrod, Ramirez, Trester LLP
801 South Figueroa Street, 15th Floor
Los Angeles, California 90017

Phone: (213) 624-6900
Fax: (213) 624-6999
email: dig@manningllp.com
[*Attorneys for Fourth-Party Defendant, Marine Claims Services. Inc.*]